## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE CLAIRE R. KELLY

_____x
              :

JIANGSU DINGSHENG NEW MATERIALS  :
JOINT-STOCK CO., LTD.; DINGSHENG   :
ALUMINIUM INDUSTRIES (HONG KONG) :
TRADING CO., LIMITED (DINGSHENG   :
ALUMINIUM INDUSTRIES (HONG KONG) :    Court No. 23-00264
TRADING CO., LTD.); HANGZHOU     :
DINGSHENG IMPORT & EXPORT CO., LTD. :    **PUBLIC VERSION**
(HANGZHOU DINGSHENG IMPORT AND  :
EXPORT CO., LTD.); HANGZHOU FIVE STAR :
ALUMINIUM CO., LTD.; HANGZHOU    :
TEEMFUL ALUMINIUM CO., LTD.; INNER :
MONGOLIA LIANSHENG NEW ENERGY  :
MATERIAL CO., LTD.; and INNER      :
MONGOLIA XINXING NEW ENERGY    :
MATERIAL CO., LTD.,            :
              :
          Plaintiffs,    :
              :
    v.                :
              :
UNITED STATES,           :
              :
         Defendant,   :
              :
    and              :
              :
ALUMINUM ASSOCIATION TRADE    :
ENFORCEMENT WORKING GROUP AND ITS :
INDIVIDUAL MEMBERS, _et al.,_     :
              :
         Defendant-Intervenors. :
_____x

## <u>PLAINTIFFS' COMMENTS ON COMMERCE'S REMAND REDETERMINATION</u>

Ned H. Marshak
Dharmendra N. Choudhary*
Jordan C. Kahn*

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

599 Lexington Ave., 36th Floor
New York, New York 10022
(212) 557-4000

**

*1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiffs Jiangsu Dingsheng New
Materials Joint-Stock Co., Ltd., Dingsheng
Aluminium Industries (Hong Kong) Trading Co.,
Limited (Dingsheng Aluminium Industries (Hong
Kong) Trading Co., Ltd.), Hangzhou Dingsheng
Import & Export Co., Ltd. (Hangzhou Dingsheng
Import and Export Co., Ltd.), Hangzhou Five Star
Aluminium Co., Ltd., Hangzhou Teemful Aluminium
Co., Ltd., Inner Mongolia Liansheng New Energy
Material Co., Ltd., and Inner Mongolia Xinxing
New Energy Material Co., Ltd.*

Dated: February 2, 2026

## <u>TABLE OF CONTENTS</u>

BACKGROUND .................................................................................................... 1

I.   STANDARD OF REVIEW ............................................................................ 2

II.  THE REMAND VIOLATES 19 U.S.C. § 1677m(d) ..................................... 3

   A.   The Remand Extensively Relies on DRQR Deficiencies .................................. 3

   B.   19 U.S.C. § 1677m(d) Overview ...................................................................... 4

   C.   The Remand Violates 19 U.S.C. § 1677m(d) .................................................. 6

   D.   Commerce's Claim of 19 U.S.C. § 1677m(d) Inapplicability is Meritless ........................ 7

III. THE REMAND'S DENIAL OF DINGSHENG's DOUBLE REMEDIES OFFSET IS
     UNSUPPORTED BY SUBSTANTIAL EVIDENCE ........................................................ 10

CONCLUSION .................................................................................................... 22

## <u>Table of Authorities</u>

**Cases**

*American Tubular Products, LLC v. United States*, 2014 WL 4977626 (CIT Sept. 26, 2014)...... 5

*American Tubular Products, LLC v. United States*, 847 F.3d 1354 (Fed. Cir. 2017) ................... 8

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ....................................................................... 3

*Hebei Metals & Minerals Imp. & Exp. Corp. v. United States*, 28 CIT 1185 (2004) ................... 5

*Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375 (Fed. Cir 2022) ................................... 5

*Jiangsu Dingsheng New Materials Joint-Stock Co. v. United States,* 794 F. Supp. 3d 1334
    (CIT 2025) ......................................................................................................... 1, 2, 6, 9

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ............................................... 3, 8, 9

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ........................................ 21

*Meihua Group Int'l Trading (Hong Kong) Ltd. v. United States*, 633 F. Supp. 3d 1203 (CIT
    2023) ............................................................................................................................... 5

*Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272 (2008) ......................................... 2

*PT. Zinus Global Indonesia v. United States*, 686 F. Supp. 3d 1349 (CIT 2024) ......................... 5

*Ta Chen Stainless Steel Pipe v. United States*, 23 CIT 804 (1999) ............................................... 5

**Regulations**

19 U.S.C. § 1677(m) ............................................................................................................ passim

**Statutes**

19 U.S.C. § 1516a .......................................................................................................................... 3

**Other Authorities**

*Certain Aluminum Foil from People's Republic of China: Preliminary Results of Antidumping
    Duty Administrative Review, Partial Rescission of Antidumping Duty Administrative Review,
    and Preliminary Determination of No Shipments; 2021–2022*, 88 Fed. Reg. 29,092
    (May 5, 2023)................................................................................................................... 6

*Certain Aluminum Foil from the People's Republic of China: Final Results of Antidumping Duty
    Administrative Review and Final Determination of No Shipments; 2021-22*, 88 Fed. Reg.

76,734 (Nov. 7, 2023) ......................................................................................................... 1, 6

*Certain Aluminum Foil from the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review and Rescission of Review, in Part; 2021*, 88 Fed. Reg. 28,496 (May 4, 2023) ......................................................................................... 12

*Certain Aluminum Foil from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 75,267 (Nov. 2, 2023) .................... 11, 12, 13

*Certain Tool Chests and Cabinets from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 83 Fed. Reg. 15,365 (Apr. 10, 2018) ......... 20

PUBLIC VERSION

Plaintiffs Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd., Dingsheng Aluminium Industries (Hong Kong) Trading Co., Limited (Dingsheng Aluminium Industries (Hong Kong) Trading Co., Ltd.), Hangzhou Dingsheng Import & Export Co., Ltd. (Hangzhou Dingsheng Import and Export Co., Ltd.), Hangzhou Five Star Aluminium Co., Ltd., Hangzhou Teemful Aluminium Co., Ltd., Inner Mongolia Liansheng New Energy Material Co., Ltd., and Inner Mongolia Xinxing New Energy Material Co., Ltd. (collectively, "Dingsheng") submit comments on the Final Results of Redetermination Pursuant to Remand (Dec. 15, 2025), ECF 75-76, C.R.R. 4, P.R.R. 4 ("Remand"), filed by the U.S. Department of Commerce ("Commerce" or "Department"), in response to this Court's ruling, *Jiangsu Dingsheng New Materials Joint-Stock Co. v. United States,* 794 F. Supp. 3d 1334 (CIT 2025), in the fourth, 2021-2022 administrative review ("AR4") of the antidumping duty ("ADD") order on aluminum foil from the People's Republic of China ("China"), with the period of review ("POR") spanning April 1, 2021, through March 31, 2022.

## **BACKGROUND**

This Court ordered remand because Commerce had unlawfully denied Dingsheng's double remedies offset. *Id.* at 1344-48; *see Certain Aluminum Foil from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021-22*, 88 Fed. Reg. 76,734 (Nov. 7, 2023), P.R. 213 ("*Final Results*"), Issues and Decision Memorandum, P.R. 210 ("IDM"), Comment 3. Specifically, this Court found and ordered as follows:

> Commerce's cost-to-price analysis is contrary to law because Commerce misinterprets the statute. Commerce concludes that Dingsheng cannot show a reduction in prices during the relevant period because prices increased during the POR. IDM at 10. Contrary to Commerce's view, subsection (B) does not require a reduction in the average cost of the imports from one moment of the relevant period to another moment within the same period, rather subsection (B) requires that the subsidy reduced average prices during the relevant period, as compared to

1

what the prices would have been without the subsidy. Therefore, on remand Commerce must consider whether the subsidy has been demonstrated to have reduced the average price of imports, meaning whether the average price of imports was less than it would have been without the subsidy.

Secondly, Commerce's analysis is not supported by substantial evidence. Commerce did not address record evidence that detracts from its determination on any subsidy-to-cost link. Although Commerce addressed certain record evidence related to the subsidy-to-cost link which shows LTAR accounting records related to Dingsheng's use of steam coal, aluminum plate and/or sheet and strip, and aluminum, see Dingsheng's Double Remedies Questionnaire Response: Administrative Review of the Antidumping Duty Order on Aluminum Foil from the People's Republic of China (A-570-053) at Exh. DR3—DR4, PD 130, CD 67, bar code 4349609-01 ("Dingsheng DRQR"), Commerce failed to address record evidence, specifically exhibits DR1 and DR2, which show decreases and increases from month-to-month over the POR of electricity costs and steam coal, primary aluminum, and sheet strip costs. See id. at Exh. DR1—DR2. Commerce's conclusion that the "cost for energy inputs increased during the POR" seems conclusory as arguably record evidence shows that costs fluctuated throughout the POR. IDM at 11.

Likewise, Commerce also fails to address record evidence which may detract from its determination related to the cost-to-price link. Although Commerce points to the fact that Dingsheng's pricing is governed by international market indices and customer negotiation, see IDM at 11 (citing Dingsheng Supplemental A & C Response, PD 133, bar code 4354244-01 (Mar. 16, 2023)), Commerce did not address DR5, which displays minutes from a company meeting concerning pricing. See Dingsheng DRQR at Exh. DR 5. Commerce has failed to address evidence which may detract from its determination, thus Commerce's denial of Dingsheng's double remedies offset is remanded for reconsideration or further explanation consistent with this opinion.

*Dingsheng*, 794 F. Supp. 3d at 1346-47.

In its Remand, Commerce continued to deny Dingsheng's double remedies offset as it did in the underlying AR4 proceeding. As discussed below, Commerce's Remand – like its initial determination – is unsupported by substantial evidence and is contrary to law.

## I.    STANDARD OF REVIEW

"The court reviews remand determinations for compliance with the court's remand order." *Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 1274 (2008). As with all Commerce ADD determinations, this Court must hold unlawful remand redeterminations that are

"unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938). In accordance with *Loper Bright Enterprises v. Raimondo*, courts are now required to "exercise their independent judgment in deciding whether an agency has acted within its statutory authority." 603 U.S. 369, 412 (2024).

## II.    **THE REMAND VIOLATES 19 U.S.C. § 1677m(d)**

The Remand identifies a host of alleged deficiencies in Dingsheng's DRQR that were first identified in the Draft Results of Redetermination Pursuant to Court Remand (Sept. 30, 2025), C.R.R. 1, P.R.R. 1. As set forth in turn below: (a) the Remand relied extensively on these supposed deficiencies; (b) Commerce is required by 19 U.S.C. § 1677m(d) to provide notice of deficient reporting and an opportunity to correct before taking adverse action; (c) Commerce has not provided the requisite notice and opportunity despite being able to do so, such that the Remand plainly violates this important statutory protection; and (d) Commerce's proffered justifications for declining to comply with this statutory directive lack merit.

### A.    **The Remand Extensively Relies on DRQR Deficiencies**

The Remand identifies a host of alleged deficiencies in Dingsheng's DRQR that Commerce identified for the first time in its Draft Remand, including:

- "Dingsheng did not demonstrate how the{} accounting records specifically relate to the provision of these goods for LTAR".

- "Dingsheng failed to sufficiently explain how the [                              ] identified in its accounting records demonstrates that its cost of manufacturing is impacted by the government provision of aluminum plate and/or sheet and strip for LTAR.";

- "Dingsheng's response failed to explain how many times it identified a change in each cost item during the POR, and Dingsheng failed to provide any documentary

3

support for its response to this question, as required by question 9 of the Double Remedies Questionnaire.";

- "Dingsheng . . . failed to provide any additional documentation to demonstrate the extent to which input costs were affected by subsidies and did not explain how its accounting vouchers showing [                    ] demonstrates that its cost of manufacturing was impacted by the government provision of aluminum plate and/or sheet and strip for LTAR.";

- "Dingsheng . . . did not explain the cost-to-price link when raw material prices [        ] . . . [                                    ]."; and

- "because sufficient evidence regarding Dingsheng's pricing decisions is missing from the record, we find that the exhibits Dingsheng submitted regarding input cost trends and its December 6, 2021, sales meeting do not sufficiently establish a cost-to-price link."

Remand at 6-10; Draft Remand at 5-9.

The Draft Remand denied Dingsheng's requested double remedies offset "{b}ecause of the deficiencies in Dingsheng's DRQR." Draft Remand at 7. Dingsheng challenged the Draft Remand because, *inter alia*, it impermissibly proposed taking action adverse to Dingsheng based on identified deficiencies without first providing Dingsheng the opportunity to remedy or explain, as mandated by statute. Dingsheng Comments on Draft Remand (Nov. 17, 2025), C.R.R. 3, P.R.R. 3, at 3-7. Commerce thereafter finalized its decision using modified language to deny Dingsheng's requested double remedies offset "{b}ecause of the insufficient supporting information in Dingsheng's DRQR." Remand at 8.

**B.    19 U.S.C. § 1677m(d) Overview**

Before taking action adverse to a respondent based on alleged reporting deficiencies, the Department has a statutory obligation to inform a party of the deficiencies in its submission to afford the party an opportunity to cure those deficiencies:

> Deficient submissions. If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority . . . shall promptly inform the

4

person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency . . . .

19 U.S.C. § 1677m(d).

This statutory directive "ensures that Commerce's data collection does not morph into an administrative guessing game, where the agency punishes parties for giving incomplete answers to cryptic questions." *American Tubular Products, LLC v. United States*, 2014 WL 4977626, *11 (CIT Sept. 26, 2014). "The failure by Commerce to provide respondents with sufficient notice can render the decision unsupported by substantial evidence and otherwise contrary to law." *Ta Chen Stainless Steel Pipe v. United States*, 23 CIT 804 (1999); *see Hebei Metals & Minerals Imp. & Exp. Corp. v. United States*, 28 CIT 1185, 1193-95 n.3 (2004) (noting that alleged deficiencies in submitted information that are only articulated upon the issuance of the final determination provide little basis from which to understand how to remedy the identified deficiencies before the conclusion of a proceeding, as well as little reason to seek out additional information to supplement the submitted data).

Reviewing courts have reaffirmed the importance of this statutory protection in a series of recent decisions:

- *Meihua Group Int'l Trading (Hong Kong) Ltd. v. United States*, 633 F. Supp. 3d 1203, 1212 (CIT 2023) –"Commerce neither notified Meihua of any deficiencies in its provision of information, nor provided Meihua with an opportunity to correct such deficiencies";

- *PT. Zinus Global Indonesia v. United States*, 686 F. Supp. 3d 1349, 1355 (CIT 2024) – "It is clear that Commerce failed to comply with the requirements under 19 U.S.C. § 1677m(d) to inform Zinus Indonesia of the nature of a deficiency and provide Zinus Indonesia with an opportunity to remedy or explain the deficiency."; and

- *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1386 (Fed. Cir 2022) – "It is undisputed that any incompleteness of sales data and information could have

been remedied by the proffered information, but for Commerce's refusal to permit Hyundai to provide this information."

## C.      The Remand Violates 19 U.S.C. § 1677m(d)

The Draft Remand, for the first time, denied Dingsheng's double remedy offset based on alleged deficiencies in the DRQR. Draft Remand at 5-10. Notwithstanding a slight change in language, the Remand denies Dingsheng's double remedies offset based on the alleged deficiencies specified in the Draft. Remand at 6-12. Yet in its initial decision, prior to remand, Commerce did not identify the litany of alleged deficiencies in Dingsheng's DRQR reporting upon which the remand relied. *Compare id.* with IDM Comment 3.

Moreover, the only reason why Commerce could be excused from providing Dingsheng an opportunity to correct the alleged deficiency – *i.e.*, impracticality due to time constraints – is inapplicable to AR4 here because:

- Dingsheng filed its DRQR on March 3, 2023 –over two months before the Department published its preliminary results on May 5, 2023. *Certain Aluminum Foil from People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2021–2022*, 88 Fed. Reg. 29,092 (May 5, 2023), P.R.R. 194 ("*Preliminary Results*"). Commerce therefore had sufficient time before the initial preliminary results to issue a supplemental double remedies questionnaire identifying deficiencies and providing an opportunity to correct, but did not do so;

- Commerce could have issued a post-preliminary supplemental double remedies questionnaire in the six months between publishing the preliminary results and November 7, 2023, when it published the *Final Results*, 88 Fed. Reg. 76,734, but did not do so;

- Commerce could have on remand, in response to its double remedies analysis being invalidated by this Court, *Dingsheng*, 794 F. Supp. 3d at 1344-47, issued a remand supplemental double remedies questionnaire in the three months allotted before the Remand was to be filed, *id.* at 1347, but did not do so;

- Commerce could have, as requested by Dingsheng, issued a remand supplemental double remedies questionnaire in the two and a half months between issuing its Draft Remand in September 2025 and its Remand in mid-December 2025,

6

Dingsheng Comments on Draft Remand at 7, but did not do so; and

- Commerce could have requested that this Court extend the time period in which was required to issue its final remand redetermination, so that Commerce could issue a supplemental DRQR and analyze Dingsheng's response, but did not do so.

In sum, the record in this proceeding is devoid of any notice or opportunity for Dingsheng to respond to the alleged deficiencies in its DRQR that the Draft Remand for the first time found to be deficient and that the Remand relies upon to finalize that denial. In the absence of notice and opportunity to comment, Commerce was prohibited by law from denying the requested double remedies offset. Accordingly, this Court should order remand for Commerce to correct this error and issue a decision which conforms to law.

### D.    Commerce's Claim of 19 U.S.C. § 1677m(d) Inapplicability is Meritless

Commerce claims that 19 U.S.C. § 1677m(d) does not apply to the double remedies offset. Remand at 13. According to Commerce, this statutory protection only applies when Commerce applies adverse facts available ("AFA"). *Id.* This claim should be rejected. The plain language of Section1677m(d) creates a statutory obligation for Commerce to identify "the nature of the deficiency and . . . provide . . . an opportunity to remedy or explain that deficiency" when Commerce "determines that a response to a request for information under this subtitle does not comply with the request." 19 U.S.C. § 1677m(d). This language is not confined to decisions based on AFA. Commerce here issued Dingsheng its Double Remedies Questionnaire (Feb. 10, 2023), P.R. 124, "under this subtitle" which is labelled: "Conduct of . . . administrative reviews." 19 U.S.C. § 1677m(d). The judicial precedent relied upon by Commerce involving denials of scrap offsets or constructed export price ("CEP") offsets are inapplicable since those cases did not involve any informational deficiencies; instead, Commerce, after analyzing the entirety of the record evidence – which were not found incomplete – denied respondents the claimed adjustments. *Id.*; Remand at 13 nn-61-62.

Contrary to Commerce's assertion, *American Tubular Products, LLC v. United States* does not establish that the procedural requirements of notice and opportunity to correct deficiencies under 19 U.S.C. § 1677m(d) are triggered solely when Commerce relies on AFA. Remand at 13 n.61 (citing 847 F.3d 1354, 1360-62 (Fed. Cir. 2017)). There, the U.S. Court of Appeals for the Federal Circuit reasoned:

> In this review, Commerce requested Chengde to provide records demonstrating the *production* of OCTG during the period of review. Chengde unambiguously responded that it did not measure or record steel scrap production at the time it was produced. On this record, Commerce was not obligated to accommodate Chengde's failure to document scrap production; **nor was Commerce obligated to continue asking for information that Chengde clearly stated it did not record**.

*American Tubular*, 847 F.3d at 1361-62 (italicized emphasis in italics in original, emphasis in bold added)

Commerce was not obligated to resort to 19 U.S.C. § 1677m(d) protocols in *American Tubular* because the relevant information undeniably did not exist, and such protocols undeniably could not have resulted in the submission of additional information needed to cure the deficiency in the record. As such, Commerce's failure to provide 19 U.S.C. § 1677m(d) notice and opportunity to proffer additional information had no causal relationship with the non-AFA nature of its decision. Consequently, *American Tubular* does not relieve Commerce of its statutory obligations under 19 U.S.C. § 1677m(d) in a non-AFA situation.

Moreover, there is no basis in the statutory language to limit this important statutory protection to AFA applications rather than extending Section 1677m(d) protection more broadly to all "request{s} for information," to including responses to the double remedies questionnaire. 19 U.S.C. § 1677m(d). In this regard, *Loper Bright* underscores the "solemn duty of the Judiciary" to interpret statutes and "say what the law is." 603 U.S. at 385 (internal quotations

omitted). Further, *Loper Bright* forecloses this Court from affirming Commerce's decision merely upon finding that the government's statutory interpretations is "reasonable," and for that reason alone, "must" affirm. *Id*. at 395, 400. *Loper Bright* clarified that it "makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best. **In the business of statutory interpretation, if it is not the best, it is not permissible**." *Id*. (emphasis added). Confining 19 U.S.C. § 1677m(d) to AFA as Commerce seeks to do in its Remand is neither the best nor a permissible statutory interpretation. *Id*.

In addition, Commerce should not be excused from this statutory mandate by rephrasing the basis for its denial. Commerce claims that it "is not identifying 'deficiencies' within the meaning of section 782(d) of the Act, but is, instead, explaining why Dingsheng has not met its burden of proof." Remand at 14. Yet, in its Draft Remand Commerce had plainly conceded that the double remedies offset was being denied "{b}ecause of the deficiencies in Dingsheng's DRQR." Draft Remand at 7. Commerce also claims statutory inapplicability because "in the *Preliminary Results* and *Final Results*, Commerce found that Dingsheng's responses did not sufficiently demonstrate a basis to make an adjustment." Remand at 14. This claim is not supported by the record. Commerce's double remedies offset denial during AR4 was based on a rationale expressly invalided by this Court – not the litany of deficiencies first identified by Commerce on remand. *Compare* IDM Comment 3; *Dingsheng*, 794 F. Supp. 3d at 1344-47 *with* Remand at 6-10; Draft Remand at 5-9.

Finally, the bankruptcy of Commerce's rationale is confirmed by its claim that Dingsheng should have raised its 19 U.S.C. § 1677m(d) concerns during AR4, before the litany of DRQR deficiencies were first identified on remand. According to Commerce:

> To the extent Dingsheng wished to make arguments based on section 782(d) of the Act, rather than raise such arguments for the first time in its comments on Commerce's Draft Results, it should have made these arguments either before Commerce in its administrative case brief concerning the *Preliminary Results* or in its briefing before the Court. It did not raise this issue in either instance.

Remand at 14.

This argument defies common sense. Commerce cannot reasonably expect respondents to anticipate that deficiencies will be found and request an opportunity to address them before they are identified by Commerce. This argument tuns the statutory sequence required by Section 1677m(d) on its head. Commerce cannot refuse to comply with a statutory directive merely because it was not raised when a respondent had no reason to believe – and had not been advised by Commerce – that its response was deficient in respects only subsequently articulated.

## III.    THE REMAND'S DENIAL OF DINGSHENG'S DOUBLE REMEDIES OFFSET IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE

Irrespective of whether Commerce complies with Section 1677m(d), the Remand is unsupported by substantial record evidence because Commerce misconstrues the relevant data supporting Dingsheng's subsidy-to-cost and cost-to-price linkage, as set forth below.

First, the Remand asserts that Dingsheng failed to establish a subsidy-to-cost link. Commerce claims that Dingsheng's accounting record failed to establish that its input purchases were at less than adequate remuneration ("LTAR") and further that the record did not support a link between Dingsheng's cost of input and cost of manufacturing ("COM"). Specifically, Commerce reasons that while "Dingsheng identified four {LTAR} subsidy programs under review which it claimed impacted its cost of manufacturing, and provided sample accounting vouchers as support for its claims . . . . Dingsheng did not demonstrate how these accounting records specifically relate to the provision of these goods for LTAR." Remand at 6. The Remand, overlooking Dingsheng's demonstrations (*infra*), alleges that "Dingsheng did not provide

anything in the accounting records submitted with its DRQR to specifically tie provision of goods for LTAR to the costs of raw material purchases." *Id*. at 15.

The Remand further alleges that Dingsheng "failed to provide any additional documentation to demonstrate the extent to which input costs were affected by subsidies." *Id* at 6. Again, despite Dingsheng's explanations (*infra*), the Remand reiterates that Dingsheng "failed to provide any additional documentation to demonstrate the extent to which input costs were affected by subsidies." *Id*. at 7. As explained below, the Department's rationale is without merit.

The Remand's assertion that Dingsheng's accounting of its raw material purchases are unrelated to the provisions of these goods for LTAR, and that Dingsheng failed to provide additional documentation to substantiate the proportion of subsidy, are directly contradicted by Commerce's findings in the final results of the parallel AR4 of the Countervailing Duty ("CVD") Order on aluminum foil from China with the POR of calendar year 2021. *Certain Aluminum Foil from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 75,267 (Nov. 2, 2023) ("*Final Results CVD 2021*").[1] In CVD AR4, Commerce selected Jiangsu Zhongji Lamination Materials Co., Ltd. ("Zhongji") as a mandatory respondent and determined that Zhongji purchased primary aluminum, aluminum sheet and strip, and electricity at LTAR. *Id*. IDM at 5. Commerce also determined that: "For . . . non-selected companies {i.e., Dingsheng }, we are basing the subsidy rate on the subsidy rate calculated for Zhongji, the only mandatory respondent for which the preliminary subsidy rate is not based entirely on adverse facts available (AFA)." *Certain Aluminum Foil from the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review and Rescission of*

---

[1]    Dingsheng properly relied on the Department's *Final Results CVD 2021* to support its position because this published final determination does not constitute new factual information. Dingsheng Comments on Draft Remand at 8 n.20.

*Review, in Part; 2021*, 88 Fed. Reg. 28,496 (May 4, 2023), Preliminary Decision Memorandum at 4, *affd*, *Final Results CVD 2021*, 88 Fed. Reg. 75,267.

Consequently, in the *Final Results CVD 2021*, Commerce imposed a CVD rate of 24.49 percent on Zhongji and a 25.32 percent rate on Dingsheng. *Final Results CVD 2021*, 88 Fed. Reg. at 75,269.[2] This fact demonstrates that Commerce applied all of its findings concerning LTAR inputs (primary aluminum, aluminum sheet and strip, and electricity) made for Zhongji to Dingsheng. In other words, Commerce determined that Dingsheng – like Zhongji – had purchased its inputs, *i.e.*, primary aluminum, aluminum sheet and strip, and electricity at LTAR.

Further, in its DRQR, Dingsheng on March 3, 2023, submitted a summary of the average monthly purchase prices of its LTAR inputs, including primary aluminum, aluminum sheet and strip, and electricity. DRQR Exhibits DR-112. It also submitted extracts of its monthly accounting records showing that: (1) the cost of primary aluminum, and aluminum sheet and strip are accounted for in the cost of manufacture ("COM") of the finished goods; and (2) the cost of electricity is accounted for in the factory overhead. *Id*. at 5, Exhibit DR 3 –4. These documents reveal that in establishing the COM of the merchandise under consideration ("MUC") sold to the United States, Dingsheng factors in the procurement prices of its LTAR inputs – primary aluminum, aluminum sheet and strip, and electricity. Because Commerce already determined that procurement prices of LTAR inputs were depressed on account of LTAR subsidies, the purchase prices as reflected in Dingsheng's accounting records are depressed by subsidies – as computed by Commerce in its *Final Results CVD 2021*. In turn, the subsidy-depressed prices of the LTAR inputs Dingsheng purchased form the basis for the resulting COM

---

[2]    Zhongji's initially computed *ad valorem* CVD rate was identical at 25.32 percent but on account of "entered value adjustment" ("EVA"), it was slightly reduced to 24.49 percent. *Id*., IDM Comment 2. Unlike Zhongji, Dingsheng was not a mandatory respondent in CVD AR4, and therefore it was precluded from claiming a similar EVA benefit.

of the MUC it produced. Accordingly, this COM is proportionately lowered (equivalent to the subsidy component in LTAR inputs' procurement prices).

In sum, Dingsheng's accounting records for the COM, when interpreted in light of *Final Results CVD 2021* findings, confirm that: (1) Dingsheng's inputs' procurement prices reported in those accounting records were already determined by Commerce to be LTAR prices (*i.e.*, depressed by subsidy amount); and (2) Dingsheng's COM, being directly linked to the LTAR input procurement cost, is proportionately lowered by the subsidy amount. Accordingly, the Remand's recurring claim that Dingsheng "has not sufficiently connected the accounting records it submitted with its DRQR and how the subsidies specifically impacted Dingsheng's COM" and "did not provide a 'direct link' between procurement prices of inputs for LTAR and the resulting COM in its DRQR" is without merit. Remand at 15-16.

Commerce's conclusory findings bear no correlation to practical, commercial reality. In the ordinary course of business, a party purchasing inputs at subsidized prices accounts for the inputs' procurement prices, not any subsidy amount associated with them, for obvious reasons. First there is no reason why a party would have any purpose for separately accounting for the subsidy, and the Remand fails to articulate one. Second, a party has no reason to be aware of the precise subsidy attributable to a specific input. Third, since such subsidy amounts are measured using benchmark prices, a party could not precisely quantify the amount of the subsidy even if it wanted to do so. The Remand also fails to identify what additional documentation Commerce would need to substantiate the subsidies embedded in Dingsheng's prices, especially when it already computed such subsidies in the *Final Results CVD 2021*.

Moreover, since all of these LTAR subsidies predate the POR and continued throughout the POR, Dingsheng could not possibly submit a comparison of Dingsheng's COM with and

without these LTAR subsidies. That is why Dingsheng provided Commerce with evidence of a direct link between the procurement prices of the LTAR inputs and the resulting COM. Subsidies associated with LTAR inputs are akin to a price component, equal to the difference between the LTAR prices and the corresponding benchmark prices. The fact that Dingsheng established a direct link between its LTAR input purchase prices and its COM constitutes substantial evidence that there is likewise a direct link between Dingsheng's LTAR subsidies and its COM. In short, Commerce cannot reject a double remedies offset merely because a company received LTAR subsidies predating the POR.

Second, the Remand advances spurious reasoning as to Dingsheng's accounting records: "Dingsheng's accounting records refer to [

                              ], and Dingsheng failed to explain how the [                              ] identified in its accounting records demonstrates that its cost of manufacturing is impacted by the government provision of aluminum plate and/or sheet and strip for LTAR." Remand at 6. To produce aluminum foil, Dingsheng starts its manufacturing process utilizing either primary aluminum inputs such as aluminum ingot or liquid aluminum, or secondary aluminum inputs such as aluminum plates, sheets and strip. Dingsheng's Section D Questionnaire Response (Oct. 12, 2022), Exhibits 3A-3F. When starting from upstream LTAR inputs, *i.e.*, consumption of primary aluminum inputs, Dingsheng initially produces an intermediate product, *i.e.*, self-produced aluminum strips or sheets, which are then converted to aluminum foil. *Id*. As such, the cost of self-produced aluminum strip referenced in Dingsheng's COM accounting records represent the cost of LTAR primary aluminum inputs, thereby linking the subsidy contained in Dingsheng's primary LTAR inputs with the COM.

Therefore, "the [                                    ] identified in its accounting records

demonstrates that its cost of manufacturing is impacted by the government provision of {primary

aluminum} for LTAR." Remand at 6. The Remand, while "find{ing} Dingsheng's explanation

sufficient" nonetheless alleges that "{b}y including the semi-finished materials in the accounting

records and not distinguishing between these materials and the raw material inputs (directly

impacted by LTAR subsidies), Dingsheng further obfuscates how the accounting records

supposedly establish a subsidy-to-cost link." Remand at 16-17. However, as discussed *supra*,

these belated Commerce objections are unavailing, since the Department failed to notify and

afford Dingsheng an opportunity to provide additional records for its directly purchased LTAR

[                    ]. Section II, *supra*; 19 U.S.C. § 1677m(d).

Third, the Remand improperly alleges deficiencies in Dingsheng's DRQR, reasoning

that: "Dingsheng's response failed to explain how many times it identified a change in each cost

item during the POR, and Dingsheng failed to provide any documentary support." Remand at 7.

However, Dingsheng already explained that "{t}he prices of major inputs - Al ingot, Al Liquid,

Purchased Al Strip - continuously fluctuate according to the prevailing market conditions"

DRQR at 6, Exhibits DR-1 & DR-2. Dingsheng also disclosed that it "update{s} the sales prices,

particularly when there are significant changes in the price of major inputs." DRQR at 6. Yet the

Remand inexplicably rejects Dingsheng's commercially-sound practices and unfairly requires

that Dingsheng provide a detailed reporting of each and every input cost change. The Remand

also raises frivolous objections, such as that Dingsheng "did not indicate in the DRQR that 'only'

significant cost changes in LTAR inputs resulted in changing sales prices as it claims in its

comments on the Draft Results . . . {and also} did not indicate what would constitute a

'significant' change in an input cost." Remand at 17. Commerce misconstrues Dinsheng's

15

statements. Dingsheng neither stated it had a formulaic metric to measure significant changes in input cost, nor foreclosed the possibility of a price change unless there were only significant changes in the input cost. Dingsheng reported that it did not have a threshold for changes in the COM under which it would not adjust prices. DRQR at 6. As such, Dingsheng's ordinary practice – consistent with commercial reality and normal business practices – to resort to a price revision when there are significant changes in the input cost, does not limit its ability to undertake revision of prices when such changes are not significant.

Fourth, the Remand improperly reasons that: "because Dingsheng did not establish that changes to the cost of manufacturing are based on the receipt of a subsidy rather than [                                        ], we continue to find that Dingsheng has not established a subsidy-to-cost link." Remand at 8. In support, the Remand relied on its precedent from a prior review proceeding. *Id*. n.37. This rationale is meritless because it ignores the fact that inputs' fluctuating market index based prices (*i.e.*, benchmark prices) are dragged down by the tagged subsidies – resulting in Dingsheng's LTAR procurement prices. In other words, LTAR input prices are simply market index based input prices (*i.e.*, benchmark prices), adjusted downward by the associated subsidies. This occurrence can be formulaically represented as follows:

LTAR prices = Market Index based prices – Subsidies

Dingsheng's COM is determined by aggregating its LTAR input prices and factory overheads. Dingsheng's accounting records establish that its COM is based on LTAR input prices. Since LTAR prices are a function of two price variables – market index based price and subsidies – Dingsheng's COM is directly related to both of the variables. The fact that COM is based on market index prices of inputs does not negate the fact that COM is also invariably dependent on the subsidies tagged to the market index prices. Therefore, contrary to the

Remand's finding, Dingsheng's accounting records in fact establish a subsidy-to-cost link. Further, since Commerce's prior review's rejection of the double remedies offset did not account for the factors discussed above, that decision should not have been followed in the final remand redetermination and cannot be relied upon by this Court.

Fifth, the Remand wrongly rejected Dingsheng's cost-to-price links, reasoning that: "Dingsheng stated that its 'policy is to adjust the price when the key raw materials prices show a downward trend,' but it did not explain the cost-to-price link when raw material prices [          ] instead, [                                      ]." Remand at 9. The Remand misconstrues Dingsheng's position. Question 11 of Commerce's double remedies questionnaire specifically required Dingsheng to "describe your company's policy or practice with regard to price reductions, and provide the most recent example during the relevant period when you lowered the price of subject merchandise in response to a decrease in an input cost or the {COM}." Dingsheng DRQR at 7. In response, Dingsheng explained how, based on a reduction in LTAR input prices during October to December 2021, it lowered its finished goods sales prices in January and February 2022. *Id*. at 7-8. It is disingenuous for the Remand to fault Dingsheng's response when Commerce never asked that Dingsheng provide an illustration of cost-price linkages during a time period after the input cost trended higher.

Moreover, record evidence confirms that Dingsheng adjusted its sale price upward to account for an increase in LTAR input costs. To illustrate, for CONNUM [            ] produced by the same manufacturer and sold to the same buyer, the average price was revised upwards from [      ] (May 2021) to [      ] (October 2021). Dingsheng Section C Questionnaire Response (Oct. 12, 2022) ("CQR"), Exhibit C-1 (U.S. sales database).

The Remand also fails to counter Dingsheng's cost-to-price linkages when reasoning that prices increased "again between January 2021 and March 2022." Remand at 9. As the Remand recognizes, Dingsheng's LTAR input prices decreased "only for the months of October through December 2021, {while} the input costs reported by Dingsheng show [         ] in the prices of these inputs for the rest of the POR." Remand at 9. Therefore, the price increase in March 2022 is consistent with the rise in LTAR input costs during March 2022, which, in turn, affirms the cost-to-price linkage. The Remand "agree{s} with Dingsheng's reasoning regarding the March 2022 price increase." Remand at 20.

Sixth, the Remand unpersuasively attempts to impeach Dingsheng's demonstration that its sale prices decreased from January to February 2022. Specifically, it reasons that Dingsheng calculated the average prices "based on the date of shipment . . . rather than the sales invoice date . . . {and that the prices} [         ] between December 2021 and January 2022." *Id.* at 9. Commerce's rejection of the significance of the downward price trend because the entries Dingsheng selected for price comparison purposes were based on the date of shipment rather than the date of invoice is unavailing. For the post-December 2021 month-to-month price comparison, Dingsheng considered an entry with shipment date of February 1, 2022, only because there were no dates of invoice falling in February 2022. The Remand overlooked that, pursuant to Dingsheng's December 2021 decision to lower prices, Dingsheng's sale prices in January 2022 trended downwards. Because the decision to lower the prices was effectuated in December 2021, there was a time lag before the lower prices kicked in. Consequently, in the initial period of January 2022, the prices remained on the higher side. As such, the Remand erroneously compared December 2021 and January 2022 prices.

The downward price trend in January 2022 is evident from the fact that average prices dropped from [          ] (January 1-15, 2022) to [              ] (January 16-31, 2022). *Id.* at 20-21. Yet the Remand contests Dingsheng's demonstration, reasoning that such a downward trend was "due to a single sale [

]." *Id.* at 21.

The Remand further reasons that "[

]." *Id.* Commerce's reasoning is flawed because it improperly included [     ] additional sales made in December 2021 in its analysis. The table below summarizes the price data of [     ] sales made in the first half of January and [     ] sales made in the second half of January.

|  | **SALINDTU** | **GRSUPRU** |  |
|---|---|---|---|
| [ | | | ] |
| [ | | | ] |
| [ | | | ] |
| [ | | | ] |
| [ | | | ] |

CQR Exhibit C-1 (U.S. sales database).

This table clearly reveals an overall downward trend of average prices from the first to the second half of January 2022. Contrary to Commerce's assertion, the [              ] price of [            ] is not an outlier in relation to the [        ] sales during January 15-31, 2022 whose prices ranged from [            ] to [              ]. Specifically, the percentage difference between [            ] and the lowest price of [            ] is merely [       ],

contradicting Commerce's conclusion. Accordingly, Dingsheng, in fact, demonstrated a cost-to-price linkage.

Finally, the Remand advances meritless reasoning concerning the London Metal Exchange ("LME") index. According to Commerce, "in several of the sales quotes, Dingsheng includes [

].'' Remand at 8. The Remand then concludes "that changes in a respondent's pricing resulting from changes in [                                              ] rather than changes in cost of production detract from a finding that respondent has established a cost-to-price link." *Id*. As explained below, this rationale ignores agency precedent.

Commerce's well established pass-through adjustment (while granting the double remedies offset) accounts for other factors such as LME index that also may influence the export sale prices. Commerce's explanation in its ADD investigation of *Tool Chests and Cabinets from China* is instructive:

> {W}e continue to rely on the Bloomberg data to calculate the domestic passthrough rate . . . .
>
> The pass-through concept relates total variable cost to price and concerns how changes in the former affect the latter; . . . .
>
> {W}e use the Bloomberg ratio to measure the extent to which: (1) factors in addition to variable cost changes, such as global demand, affect price, and (2) these conditions would likely affect the domestic and export markets.

*Certain Tool Chests and Cabinets from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 83 Fed. Reg. 15,365 (Apr. 10, 2018) ("*Tool Chests*"), IDM Comment 15.

The Remand unpersuasively attempts to distinguish *Tool Chests*. According to Commerce: "the instances that Dingsheng cites are cases in which the offset has been applied

after Commerce has found the necessary subsidy-to-cost and cost-to-price links have been met {while}{h}ere . . . Commerce continues to find that Dingsheng has not demonstrated a subsidy-to-cost link." Remand at 18. Unlike *Tool Chests*, here Commerce improperly relied on the fact that Dingsheng's price changes also resulted from LME index's variation, to negate Dingsheng's cost-to-price linkage. In doing so, the Remand directly contradicts Commerce's well-established practice to consider other factors like LME index trend that also influence the price only after its analysis of cost-to-price linkage, instead of conflating the two distinct issues. Since the Remand prematurely invokes the LME index factor to deny the cost-to-price linkage instead of accounting for it through a Bloomberg pass-through adjustment factor to the double remedies offset, Commerce's determination is directly contrary to well established precedent.

The Remand also misplaces reliance on inapposite arguments advanced by Defendant-Intervenor Aluminum Association Trade Enforcement Working Group. Commerce in so doing improperly claims that Dingsheng's "[

]." Remand at 19. This reasoning is impermissibly speculative. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'"). Dingsheng reported that its sale price was set and revised based on its cost of production, prevailing market conditions, expected profit and "existing relationship with a customer." DRQR at 2. Dingsheng also reported that "{f}or each customer, the company typically issues separate and distinct price quotations." DRQR at 3. However, any influence on the price revisions based on Dingsheng's relationship with customers is secondary to the primary causal factors, especially changes in Dingsheng's COM. Therefore, the Remand's rationale is without merit.

21

In sum, Dingsheng established both subsidy-to-cost and cost-to-price linkages, and the Remand's reasoning is not in accordance with law and unsupported by both substantial evidence and agency precedent.

## **CONCLUSION**

For the reasons identified above, Dingsheng respectfully requests that this Court again remand Commerce's denial of Dinghseng's double remedies offset, because the justifications articulated in the Remand to maintain such denial from the *Final Results* remain unsupported by substantial evidence and otherwise not in accordance with law.

Respectfully submitted,

*/s/ Dharmendra N. Choudhary*
Ned H. Marshak
Dharmendra N. Choudhary*
Jordan C. Kahn*

GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP
599 Lexington Ave., 36th Floor
New York, New York 10022
(212) 557-4000
**
*1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiffs Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd., Dingsheng Aluminium Industries (Hong Kong) Trading Co., Limited (Dingsheng Aluminium Industries (Hong Kong) Trading Co., Ltd.), Hangzhou Dingsheng Import & Export Co., Ltd. (Hangzhou Dingsheng Import and Export Co., Ltd.), Hangzhou Five Star Aluminium Co., Ltd., Hangzhou Teemful Aluminium Co., Ltd., Inner Mongolia Liansheng New Energy Material Co., Ltd., and Inner Mongolia Xinxing New Energy Material Co., Ltd.*

Dated: February 2, 2026

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiffs' Memorandum of Law In Support of Rule 56.2 Motion, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word, is 6,686 words—less than the 10,000 word limit.

/s/ *Dharmendra N. Choudhary*
Dharmendra N. Choudhary

*Counsel for Plaintiffs Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd., Dingsheng Aluminium Industries (Hong Kong) Trading Co., Limited (Dingsheng Aluminium Industries (Hong Kong) Trading Co., Ltd.), Hangzhou Dingsheng Import & Export Co., Ltd. (Hangzhou Dingsheng Import and Export Co., Ltd.), Hangzhou Five Star Aluminium Co., Ltd., Hangzhou Teemful Aluminium Co., Ltd., Inner Mongolia Liansheng New Energy Material Co., Ltd., and Inner Mongolia Xinxing New Energy Material Co., Ltd.*

Dated: February 2, 2026