**THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

|  |  |  |
|---|---|---|
| | ) | |
| JIANGSU DINGSHENG NEW MATERIALS JOINT-STOCK CO., LTD., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 23-00264 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP and ITS INDIVIDUAL MEMBERS, *et al.*, | ) ) ) ) | |
| Defendant-Intervenors. | ) ) | |

**Order**

Upon consideration of the Department of Commerce's final results of redetermination pursuant to remand, defendant's response in support thereto, and all other pertinent papers, it is hereby

ORDERED that the remand results are sustained in their entirety; and further

ORDERED that final judgment is entered in favor of the United States.

Dated:＿＿＿＿＿＿＿＿, 2026    ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

New York, NY                    CLAIRE R. KELLY, JUDGE

**THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| JIANGSU DINGSHENG NEW MATERIALS JOINT-STOCK CO., LTD., *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Court No. 23-00264 |
| UNITED STATES, | ) ) ) |
| Defendant, | ) ) |
| and | ) ) |
| ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP and ITS INDIVIDUAL MEMBERS, *et al.*, | ) ) ) ) |
| Defendant-Intervenors. | ) ) ) |

**Defendant's Reply to Comments on Remand Redetermination**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL
JonZachery Forbes
Attorney
Office of Chief Counsel
For Trade Enforcement & Compliance
Department of Commerce

TATE NATHAN WALKER
Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044

Tel: (202) 307-0163
Fax: (202) 305-7643

April 2, 2026

*Attorneys for Defendant*

**Table of Contents**

Background ...................................................................................................................2

    I.      The Administrative Determination under Review .....................................2

    II.     Commerce's Final Results .........................................................................2

    III.    The Court's July 21, 2025 Remand Order ...............................................3

    IV.   Commerce's Remand Results ....................................................................3

Argument ....................................................................................................................4

    I.      Standard of Review ...................................................................................4

    II.     Legal Framework ......................................................................................4

    III.    Commerce's Remand Results Are Supported by Substantial Evidence and Are in Accordance with Law ...........................................................................5

          A.  Commerce Reasonably Concluded That Dingsheng Failed To Establish a Subsidy-to-Cost Link and A Cost-to-Price Link ...................................6

              1.   Subsidy-to-Cost Link ...................................................................6

              2.   Cost-to-Price Link.......................................................................10

    IV.   Dingsheng Waived Its Argument Regarding Commerce's Obligations under 19 U.S.C. § 1677m(d) .............................................................................12

Conclusion ................................................................................................................17

i

# Table of Authorities

**Cases**                                                                                          **Page(s)**

*Am. Tubular Products, LLC v. United States*,
847 F.3d 1354 (Fed. Cir. 2017)...................................................................................... 17

*Amanda Foods (Vietnam) Ltd. v. United States*,
774 F. Supp. 2d 1286 (Ct. Int'l Trade 2011) ............................................................... 4

*Daikin America, Inc. v. United States*,
2024 WL 1171736 n.3 (Ct. Int'l Trade Mar. 14, 2024)...................................... 14, 16

*Dong-A Steel Company v. United States*,
475 F. Supp. 3d 1317 (Ct. Int'l Trade 2020) ....................................................... 14, 16

*DynaEnergetics U.S., Inc. v. United States*,
298 F. Supp. 3d 1363 (Ct. Int'l Trade 2018) ............................................................... 4

*Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd v. United States*,
794 F. Supp. 3d 1334 (Ct. Int'l Trade 2025) ............................................................... 1

*Jiangsu Zhongji Lamination Materials Co., (HK) Ltd. v. United States*,
2023 WL 3863201 (Ct. Int'l Trade June 7, 2023) ....................................................... 6

*Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*,
803 F. Supp. 3d 1291 (Ct. Int'l Trade 2025) ............................................................. 13

*Koyo Seiko Co. v. United States*,
551 F.3d 1286 (Fed. Cir. 2008)...................................................................... 14, 16

*Koyo Seiko Co., Ltd. v. United States*,
516 F. Supp. 2d 1323 (Ct. Intl. Trade 2007)............................................................. 17

*NTN Corp. v. United States*,
306 F.Supp.2d 1319 (Ct. Intl. Trade 2004)............................................................... 17

*Saarstahl AG v. United States*,
949 F. Supp. 863 (Ct. Intl. Trade 1996), *aff'd in part, rev'd in part*, 177 F.3d 1314 (Fed. Cir.
1999) .......................................................................................................................... 13

*Vincentin S.A.I.C. v. United States*,
503 F. Supp. 3d 1255 (Ct. Int'l Trade 2021), *aff'd on other grounds,* 42 F.4th 1372 (Fed. Cir.
2022) ....................................................................................................................*passim*

*Yantai CMC Bearing Co. Ltd. v. United States*,
203 F. Supp. 3d 1317 (Ct. Intl. Trade 2017)............................................................. 11

*Zhaoqing Tifo New Fibre Co., Ltd. v. United States*,
256 F. Supp. 3d 1314 (Ct. Int'l Trade 2017) .............................................................. 13

**Statutes**

19 U.S.C. § 1516a(b) ..................................................................................................... 4

19 U.S.C. § 1677b(c) ..................................................................................................... 4

19 U.S.C. § 1677e .................................................................................................... 13, 16

19 U.S.C. § 1677f-1(f) ..............................................................................................*passim*

19 U.S.C. § 1677m(d) ...............................................................................................*passim*

**Regulations**

19 C.F.R. § 351.401(b)(1)...................................................................................... 13, 14, 15

**Other Authorities**

*Certain Aluminum Foil from People's Republic of China: Preliminary Results of Antidumping
Duty Administrative Review, Partial Rescission of Antidumping Duty Administrative Review,
and Preliminary Determination of No Shipments*,
88 Fed. Reg. 29,092 (Dep't of Commerce May 5, 2023) .......................................... 2

*Certain Aluminum Foil from the People's Republic of China: Final Results of Antidumping
Administrative Review and Final Determination of No Shipments; 2021-2022*,
88 Fed. Reg. 76,734 (Dep't of Commerce Nov. 7, 2023), and accompanying Issues and
Decision Memorandum................................................................................................. 2, 3

*Certain Aluminum Foil from the People's Republic of China: Final Results of Countervailing
Duty Administrative Review; 2021*,
88 Fed. Reg. 75,267 (Dep't of Commerce Nov. 2, 2023)........................................... 7

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| JIANGSU DINGSHENG NEW MATERIALS JOINT-STOCK CO., LTD., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP and ITS INDIVIDUAL MEMBERS, *et al.*,<br><br>Defendant-Intervenors. | Court No. 23-00264 |

**Defendant's Reply to Comments on Remand Redetermination**

Defendant, the United States, respectfully responds to the comments filed by plaintiffs, Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd, *et al*. (collectively, Dingsheng), ECF Nos. 81–82 (Dingsheng Cmts.), concerning the United States Department of Commerce's final remand redetermination filed in accordance with this Court's July 21, 2025 decision and remand order in *Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd v. United States*, 794 F. Supp. 3d 1334 (Ct. Int'l Trade 2025), ECF No. 66 (Remand Order). *See* Final Results of Redetermination Pursuant to Court Remand, dated December 15, 2025 (ECF No. 76) (Remand Results). For the reasons set forth below, we respectfully request that the Court sustain Commerce's remand results and enter final judgment in favor of the United States.

**Background**

**I.    The Administrative Determination under Review**

The administrative determination under review is the final results issued in the antidumping duty administrative review of certain aluminum foil (aluminum foil) from the People's Republic of China (China).  *See Certain Aluminum Foil from the People's Republic of China: Final Results of Antidumping Administrative Review and Final Determination of No Shipments; 2021-2022*, 88 Fed. Reg. 76,734 (Dep't of Commerce Nov. 7, 2023) (Final Results) (P.R. 213), and accompanying Issues and Decision Memorandum (IDM) (P.R. 210).  The period of review (POR) is April 1, 2021, through March 31, 2022.

**II.    Commerce's Final Results**

On May 5, 2023, Commerce published the Preliminary Results in which it determined that Dingsheng had not provided sufficient evidence to warrant a double remedies adjustment under 19 U.S.C. § 1677f-1(f)(1)(B).  *See Certain Aluminum Foil from People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments*, 88 Fed. Reg. 29,092 (Dep't of Commerce May 5, 2023) (P.R. 194), and accompanying Issues and Decision Memorandum (PDM) (P.R. 189).  In the Preliminary Results, Commerce determined that Dingsheng failed to demonstrate that its cost of manufacturing was linked to the price of its aluminum foil.  PDM at 23.  Instead, Commerce found that the price of Dingsheng's aluminum foil was "linked to periodic fluctuations in aluminum foil prices."  PDM at 23.

In the Final Results, Commerce again found that an adjustment for double remedies was not warranted.  IDM at 9–11.  Commerce found that Dingsheng failed to demonstrate both a subsidy-to-cost link and a cost-to-price link.  IDM at 10–11.  Specifically, Commerce found that

2

Dingsheng's cost for energy inputs increased during the POR, despite arguing that energy inputs were subject to countervailable subsidies, and that the Dingsheng's prices were governed by "market indices and customer negotiation" rather than "fabrication or metal cost pass through formulae." IDM at 10–11.

### III.    The Court's July 21, 2025 Remand Order

On July 21, 2025, the Court sustained in part and remanded in part Commerce's final results. First, the Court held that Commerce misapplied 19 U.S.C. § 1677f-1(f)(1), by requiring that Dingsheng show an absolute reduction in prices during the relevant period and denying the remedy based on price increases during the POR. Remand Order at 18–20. The Court further concluded that Commerce's analysis was not supported by substantial evidence, observing that Commerce failed to address record evidence that detracted from the determination in the Final Results as it relates to a subsidy-to-cost link as well as a cost-to-price link. *Id.* at 20–21 Specifically, Commerce failed to address information showing fluctuation of certain costs over the POR and minutes from a company meeting concerning pricing decisions. *Id.* Therefore, the Court remanded Commerce's determination not to adjust for alleged double remedies for further explanation consistent with the Court's opinion. *Id.* at 22.

### IV.    Commerce's Remand Results

In its remand results, Commerce again determined that Dingsheng failed to demonstrate a subsidy-to-cost link and cost-to-price link after thoroughly addressing the parties' comments on the draft results. Remand Results at 5-11. Accordingly, Commerce determined that Dingsheng had failed to meet the requirements of 19 U.S.C. § 1677f-1(f)(1)(C) and did not warrant the application of a double remedy adjustment.

**Argument**

## I.      Standard of Review

The Court's standard of review of remand determinations is the same as its standard of review of original determinations.  *See* 19 U.S.C. § 1516a(b)(1)(B)(i)); *see also DynaEnergetics U.S., Inc. v. United States*, 298 F. Supp. 3d 1363, 1367 (Ct. Int'l Trade 2018).  Therefore, in remand proceedings, the "court will sustain {Commerce's} determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law."  *Amanda Foods (Vietnam) Ltd. v. United States*, 774 F. Supp. 2d 1286, 1290 (Ct. Int'l Trade 2011).

## II.     Legal Framework

In non-market economy antidumping duty proceedings, the law directs Commerce to make a requisite reduction to antidumping duties if a countervailable subsidy has been demonstrated to have reduced the average price of imports of the class or kind of merchandise during the relevant period.  19 U.S.C. § 1677f-1(f).  In applying 19 U.S.C. § 1677f-1(f), Commerce examines whether (A) a countervailable subsidy (other than an export subsidy) has been provided with respect to a class or kind of merchandise, (B) such countervailable subsidy has been demonstrated to have reduced the average price of imports of the class or kind of merchandise during the relevant period, and (C) Commerce can reasonably estimate the extent to which that countervailable subsidy, in combination with the use of normal value determined pursuant to 19 U.S.C. § 1677b(c), has increased the weighted-average dumping margin for the class or kind of merchandise.  *Id.*; *see also* Remand Results at 4.

When Commerce finds that each of these criteria are satisfied, the statute requires Commerce to reduce the antidumping cash deposit rate by the estimated amount of the increase

in the weighted-average dumping margin, subject to a specified cap. *See Vincentin S.A.I.C. v. United States,* 503 F. Supp. 3d 1255, 1263 (Ct. Int'l Trade 2021) (finding that, in administering 19 U.S.C. § 1677f-1(f)(1), Commerce requires the producer or exporter to demonstrate both a "subsidies-to-cost link" (the countervailed subsidy's effect on the cost of manufacturing) and a "cost-to-price link" (whether the producer's or exporter's prices changed as a result of changes in cost of manufacture). Commerce will also determine whether countervailable subsidies have been demonstrated by the producer or exporter to have reduced the average price of imports during the period under examination), *aff'd on other grounds,* 42 F.4th 1372 (Fed. Cir. 2022); *see also* Remand Results at 5.

Relevant to Commerce's Remand Results, under 19 U.S.C. § 1677f-1(f)(1)(C), Commerce must determine whether it can reasonably estimate the extent to which a countervailable subsidy has increased the weighted average dumping margin. To determine this, Commerce analyzes whether a respondent's double remedies response sufficiently demonstrates that a countervailable subsidy led to a decrease in cost of manufacture, a "subsidy-to-cost link", or that any such decrease (if it had occurred) would have resulted in a change in prices charged to the customer, a "cost-to-price link." IDM at 10–11. A respondent's failure to sufficiently demonstrate either of these criteria would support Commerce's determination not to provide the requested double-remedy adjustment. *See Vincentin,* 503 F. Supp. 3d at 1263.

## III. Commerce's Remand Results Are Supported by Substantial Evidence and Are in Accordance with Law

Commerce's remand redetermination that Dingsheng did not establish the subsidy-to-cost link or the cost-to-price link, both being required to satisfy 19 U.S.C. § 1677f-1(f)(1)(C), is supported by substantial evidence and in accordance with law. Therefore, the Court should sustain the remand results.

**A.    Commerce Reasonably Concluded That Dingsheng Failed To Establish a Subsidy-to-Cost Link and A Cost-to-Price Link**

On remand, Commerce continued to decline to grant Dingsheng a double remedy adjustment, finding that Dingsheng failed to establish a subsidy-to-cost link or a cost-to-price link. Remand Results at 8–12. Although Commerce's determination is supported by substantial evidence and in accordance with law with respect to both required links, Commerce need demonstrate that only one of the links has not been established to support its conclusion to deny the adjustment. *See Jiangsu Zhongji Lamination Materials Co., (HK) Ltd. v. United States*, 2023 WL 3863201 at *11 (Ct. Int'l Trade June 7, 2023) ("Failure to show either of these elements allows the Department to deny the double-remedy adjustment.") (citing *Vicentin*, 503 F. Supp. 3d at 1263).

**1.    Subsidy-to-Cost Link**

On remand, Commerce concludes that Dingsheng did not establish a subsidy-to-cost link because it did not establish that changes to its cost of manufacturing are based on the receipt of a subsidy rather than other factors. Remand Results at 8.

In doing so, Commerce addresses the Court's concerns regarding Dingsheng's Double Remedies Questionnaire (DRQ) at Exhibits DR-1 and DR-2 (Oct. 12, 2022) (C.R. 67; P.R. 130); Remand Order at 20. Commerce thoroughly analyzes these exhibits and concludes that the input cost calculations provided do not support Dingsheng's request. Remand Results at 8-9.

Dingsheng argues that Commerce erred in its conclusion that a non-*de minimis* countervailing duty margin–calculated based on a separate company's information and applied to Dingsheng as a non-selected company in a concurrent countervailing duty administrative review–supports the conclusion that Dingsheng purchased inputs at less-than-adequate remuneration. Dingsheng Cmts. at 11–12 (citing *Certain Aluminum Foil from the People's*

6

*Republic of China: Final Results of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 75,267 (Dep't of Commerce Nov. 2, 2023).  Dingsheng contends that Commerce in effect "applied all of its findings concerning {less than adequate remuneration} inputs (primary aluminum, aluminum sheet and strip, and electricity) made for the {other company} to Dingsheng."  Dingsheng Cmts. at 12.

In the Remand Results, Commerce explains that its practice is to ascertain whether a respondent can demonstrate that subsidy-depressed prices for inputs proportionately lowered the cost of manufacturing for purposes of 19 U.S.C. § 1677f-1(f)(1)(C).  Remand Results at 16.  The statute's requirements are not met simply by the demonstration that a respondent received countervailable subsidies.  *See Vincentin*, 503 F. Supp. 3d at 1263 ("{i}implicit in any determination from Commerce that the subsidies did not affect the price of imports is the finding that {countervailing duties} do not affect the dumping margin.").   The inquiry is whether Dingsheng "establish{ed} a link between the subsidies and its {cost of manufacturing}."  *Id.*; *see also* Remand Results at 15 ("While Dingsheng refers to Commerce's findings in the final result of the parallel countervailing duty administrative review . . ., we continue to find that Dingsheng has not sufficiently connected the accounting records it submitted . . . .{with} the subsidies.").

Dingsheng next contends that because it included documentation showing that procurement prices of its inputs are reflected in its cost of manufacturing calculation, these documents sufficiently establish the subsidy-to-cost link.  Dingsheng Cmts. at 12–13 (Dingsheng . . . submitted a summary of the average monthly purchase prices of its LTAR {less than adequate remuneration} inputs") (citation omitted).  Commerce disagreed and explains that "while Dingsheng provided accounting records to demonstrate expenses incurred for inputs that it claimed were provided for {less than adequate remuneration}," it failed to provide any

7

additional documentation to demonstrate the extent to which input costs were affected by subsidies. Remand Results at 15 (citing DRQ at Exs. DR-3 and DR-4). Specifically, "Dingsheng did not provide anything in the accounting records submitted with its {Double Remedy Questionnaire Response} to specifically tie provision of goods for {less than adequate remuneration} to the costs of raw material purchases." *Id.* Commerce's conclusion is supported by the documents cited because they identify only invoices or data accounting entries that do not provide details regarding the subsidy amounts or natures. DRQ at Exs. DR-3 and DR-4. Commerce found this to be particularly true because the record indicates intermediate product data and not separate data for any raw material inputs that were directly influenced by the subsidies at issue. Remand Results at 16-17. In fact, Dingsheng admits this in explaining that "Dingsheng factors in the procurement prices of its LTAR inputs" but it fails to indicate how Commerce should ascertain the cost of those material raw inputs or how the subsidies at issue affect those costs. Dingsheng Cmts. at 12. Thus, Commerce's determination that it could not discern the effect of subsidies on Dingsheng's cost of manufacturing is supported by substantial evidence.

Although Dingsheng disputes that calling for documentation demonstrating direct connection between received subsidies and its raw materials costs defies "commercial reality," its argument is meritless. Dingsheng Cmts. at 13. Dingsheng argues that it would not collect the information demanded by Commerce through normal business accounting practices. *Id.* The statute requires that Commerce must determine whether "such countervailable subsidy has been demonstrated to have reduced the average price of imports of the class or kind of merchandise during the relevant period." 19 U.S.C. § 1677f-1(f)(B). Thus, to know how such a subsidy is

8

reducing the price, Commerce must ascertain the interplay with the subsidy to the price at issue–in this case, a raw material input.

Dingsheng also disputes Commerce's analysis of Dingsheng's reporting of the production of intermediate products produced from the inputs Dingsheng procured for less than adequate remuneration. Dingsheng Cmts. at 14-15. Commerce explains that the inclusion of intermediate production processes "exacerbates the insufficiencies in Dingsheng's accounting records noted above, as it is even less clear how the provision of raw materials for {less than adequate remuneration} impact Dingsheng's cost of manufacturing when the accounting records provided by Dingsheng list intermediate goods produced from these raw materials, rather than the raw materials themselves." Remand Results at 16. Although Dingsheng contends that cost of the intermediate products[1] must reflect the subsidy attributable to the primary inputs, it does not cite to any documentation to support this contention. Dingsheng Cmts. at 14. Commerce reasonably concludes, therefore, that Dingsheng could not demonstrate a direct connection between such countervailable subsidies and its cost of manufacturing for its purposes under 19 U.S.C. § 1677f-1(f)(1)(C). Dingsheng's further arguments are mere disagreements with Commerce's findings, including the insufficiency of the documentation. Dingsheng Cmts. are 14-17. The fact remains that Dingsheng fails to provide documentation to meet its burden under the statute to be granted the requested offset.

Commerce also clarifies that its decision to deny an adjustment is independent of any finding with respect to the inclusion of market index prices. Remand Results at 18. Accordingly, Dingsheng's arguments that its purchase prices can permissibly reflect both

---

[1] Dingsheng's comments do not bracket this information in some instances on page 14 of its comments, though it brackets the information elsewhere.

9

changes to market indices and to subsidies received do not undermine Commerce's finding in denying the requested adjustment. Dingsheng Cmts. at 16–17, 20–21.

### 2.     Cost-to-Price Link

Commerce further concludes that Dingsheng did not establish a cost-to-price link because it did not sufficiently establish that changes to its prices are based on the changes in its cost of manufacturing rather than other factors. Remand Results at 8–11, 18–21.

In the Remand Results, Commerce first highlights the contradictory ways that Dingsheng in this proceeding has presented its practice for revising prices in relation to changes in cost of manufacturing. Remand Results at 17. Commerce identified the instances when Dingsheng has inconsistently represented its policy as A) revise prices regardless of the quantum of change in the cost of manufacturing, B) revise prices particularly when there are significant changes in the price of major inputs, or alternatively C) revise prices only when there are significant changes in the price of major inputs. Remand Results at 17. Commerce also observed that even if Dingsheng's policy were clear from the record, that Dingsheng does not identify how it quantifies significance such that Commerce would have a basis to begin to evaluate how costs affect Dingsheng's pricing, let alone reasonably estimate the extent to which the countervailable subsidies increased the weighted average dumping margin as required by 19 U.S.C. § 1677f-1(f)(1)(C). *Id.*

Dingsheng does not address its inconsistent statements identified by Commerce or explain why Commerce cannot reasonably rely on such inconsistency to support Commerce's conclusion. Dingsheng does appear to argue that its policy is to revise prices particularly when there is a significant change in major input costs. Dingsheng Cmts. at 17. However, that does not provide Commerce sufficient evidentiary basis to have found a measurable cost-to-price link

because it is not supported by any documentation demonstrating the link between cost and price, let alone address the more fundamental question of Dingsheng's inconsistent representations about what its actual practice is.

Dingsheng also contends that Commerce never asked that Dingsheng provide an illustration of cost-price linkages during a time after the input cost trended higher. Dingsheng Cmts. at 17. However, as Commerce observes, Question 4 of its questionnaire asks about the overall process or procedure that Dingsheng follows when prices change in response to costs. Remand Results at 19; *see* DRQ at 2 ("Please describe the overall process, or procedure, that your company follows in instances where prices are changed in response to changes in cost.").

Moreover, Commerce lays out its evaluation of the pricing information provided by Dingsheng and explains that the pricing trends do not appear to correlate with changes in cost of manufacturing and, thus, do not demonstrate a cost-to-price link. Remand Results at 20-21. Dingsheng disputes how Commerce evaluated the record information, but Commerce reasonably found that, barring a single outlying sale, and even taking into account an alleged lag due from a pricing decision to the resulting change in the company's books, the changes in cost of manufacturing do not correlate with the reported changes in pricing, undermining the claim that there is a reasonably measurable cost-to-price link. Remand Results at 20–21. Dingsheng's alternate explanation that the outlying sale identified by Commerce should be included impermissibly requests the Court to reweigh record evidence to determine whether the sale at issue was an outlier in the face of the evidence before Commerce. *See Yantai CMC Bearing Co. Ltd. v. United States,* 203 F. Supp. 3d 1317, 1325 (Ct. Intl. Trade 2017) ("It is not the court's role to reweigh that evidence.") (citation omitted).

Finally, Dingsheng argues that Commerce's conclusion that Dingsheng took into account considerations other than cost, such as customer relationships, in setting its prices is speculative. Dingsheng Cmt. at 21.  However, Commerce relies on Dingsheng's own company minutes whenre such considerations were discussed.  Remand Results at 18–19 (DRQ at Ex. DR-5). Accordingly, Commerce specifically cites to Dingsheng's own records to support its conclusion, which is not speculation, but instead demonstrates Commerce's appropriate reliance on record evidence.

Dingsheng claims that these considerations, like customer relationships, are secondary to the "primary causal factors" of which one is changes in Dingsheng's cost of manufacturing. Dingsheng Cmts. at 21.  These imprecise and vague descriptions of Dingsheng's practices, untethered from record evidence, highlight Commerce's reasonableness in concluding that Dingsheng did not demonstrate a cost-to-price link.

**IV.     Dingsheng Waived Its Argument Regarding Commerce's Obligations under 19 U.S.C. § 1677m(d)**

Dingsheng contends that Commerce had an affirmative obligation under 19 U.S.C. § 1677m(d) to inform Dingsheng of any deficiencies within its request for a double remedy adjustment and to allow Dingsheng the opportunity to cure these deficiencies.  Dingsheng Cmts. at 3–10.  However, Dingsheng waived this argument.  Further, even if this argument were not waived, it mischaracterizes Commerce's burden when considering requests for affirmative adjustments.

First, despite Commerce's finding that Dingsheng did not present sufficient information in its questionnaire responses to warrant an adjustment in the original Final Results, Dingsheng did not preserve any argument challenging Commerce's Final Results on the basis of 19 U.S.C. § 1677m(d) in its complaint or opening 56.2 brief.  *Zhaoqing Tifo New Fibre Co., Ltd. v. United*

12

*States*, 256 F. Supp. 3d 1314, 1328 (Ct. Int'l Trade 2017) ("Issues that are not the subject of a timely-filed complaint are, as a general rule, beyond the court's jurisdiction and cannot be entertained by the court."); *see also Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*, 803 F. Supp. 3d 1291, 1310 (Ct. Int'l Trade 2025) ("Therefore, even if a 'most strained reading' of {Plaintiff}'s complaint or its motion for judgement on the agency record might raise the issue, the issue is waived and the court declines to consider {Plaintiff}'s argument that Commerce was required by 19 U.S.C. § 1677m(d) to provide {Plaintiff} with an opportunity to correct its submission."). Accordingly, the Court should find that Dingsheng has not preserved this argument, and it should be considered waived. That would encourage judicial efficiency in this litigation, in that if this issue had properly been raised and preserved the Court could have considered this argument in the first instance before issuing the Remand Order. Raising an issue on remand that was knowable and unchallenged at the time of the underlying administrative proceeding or in the initial briefing should not be permitted. *Saarstahl AG v. United States*, 949 F. Supp. 863, 865 (Ct. Intl. Trade 1996), *aff'd in part, rev'd in part*, 177 F.3d 1314 (Fed. Cir. 1999) (granting the Government's motion to strike when, on remand, a "plaintiff has failed to raise the allocation issue either in its complaint, or in any of its papers during the long course of these proceedings.") (citation modified).

Next, even if this Court were to consider Dingsheng's arguments, section 1677m(d) is not applicable. If Commerce determines that a party has not met its burden consistent with 19 C.F.R. § 351.401(b)(1) demonstrating entitlement to a claimed adjustment, such denial does not constitute the application of facts otherwise available within the meaning of 19 U.S.C. § 1677e.

13

The regulation provides that "{t}he interested party that is in possession of the relevant information has the burden of establishing to the *satisfaction* of the Secretary the amount and nature of a particular adjustment." 19 C.F.R. 351.401(b)(1) (emphasis added). "Under this standard, the decision whether to accept a proposed allocation lies *primarily within Commerce's discretion.* In view of a lack of an adequate explanation by {appellant} . . ., Commerce acted within its discretion in rejecting {appellant's} allocation." *Koyo Seiko Co. v. United States*, 551 F.3d 1286, 1292 (Fed. Cir. 2008) (emphasis added).

This Court has concluded that normally the requirements of 19 U.S.C. § 1677m(d) are not applicable when Commerce is not applying facts otherwise available, but rather determining entitlement to a certain adjustment based on record evidence. For example, the Court has previously explained:

> The burden falls to the party seeking the CEP offset to provide the requisite evidence that would allow Commerce to determine that a CEP offset adjustment is warranted. That Commerce did not request any additional information beyond what was provided by {Plaintiff} does not discredit the validity of the conclusion drawn from that evidence. Furthermore, Commerce had no obligation under 19 U.S.C. § 1677m(d) to work with {Plaintiff} to correct for 'deficiencies' in the record, since as discussed above, it does not appear that deficiencies existed in the first place. Rather, the fundamental difference in conclusions reached by {Plaintiff} and Commerce derived not from any shortcomings in the data, but rather from differing yet equally reasonable interpretations of the evidence.

*See Dong-A Steel Company v. United States*, 475 F. Supp. 3d 1317, 1347 n.22 (Ct. Int'l Trade 2020) (citation omitted); *see also Daikin America, Inc. v. United States*, 2024 WL 1171736, at *3 n.3 (Ct. Int'l Trade Mar. 14, 2024) ("There are no facts available, adverse or otherwise, for the Department to employ when a respondent fails to carry its burden of showing eligibility for a constructed export price offset. Instead, the agency's duty is to simply deny the offset.").

14

Notably, Dingsheng fails to raise any argument discussing 19 C.F.R. § 351.401(b)(1) despite Commerce's central discussion of this provision in its analysis. *See generally* Dingsheng Cmts.; *but see* Remand Results at 12–13. Further, Dingsheng does not cite any precedent establishing that Commerce has an affirmative obligation under 19 U.S.C. § 1677m(d) with respect to the granting or denial of an affirmative adjustment sought by respondents. *See generally* Dingsheng Cmts.

Dingsheng argues that 19 U.S.C. § 1677m(d) is applicable because, in the draft remand redetermination, Commerce referred to the identified issues with Dingsheng's responses as "deficiencies." Dingsheng Cmts. at 9. However, Commerce clarified its terminology to avoid confusion in the actual remand redetermination. Remand Results at 14 ("Commerce is not identifying 'deficiencies' within the meaning of {19 U.S.C. § 1677m(d)}, but is, instead, explaining why Dingsheng has not met its burden of proof."). Even if the Court were to entertain the primacy of Commerce's draft remand redetermination over the actual remand results before the Court, Commerce's reference to "deficiencies" in the draft remand redetermination without mention of the application of facts otherwise available or 19 U.S.C. § 1677m(d), does not support Dingsheng's argument that Commerce intentionally was signaling new reliance on 19 U.S.C. § 1677m(d) that it had not raised in the underlying Final Results.

Dingsheng also claims that in the Final Results Commerce did not previously identify issues in Dingsheng's submitted information. Dingsheng Cmts. at 6. However, a review of the IDM demonstrates otherwise.

> Dingsheng has not demonstrated that the programs discussed in Dingsheng's Double Remedies Response have led to a decrease in {the cost of manufacturing} or that any such decrease (if it had occurred) would have resulted in a change in prices charged to the customer. . .. With respect to the cost-to-price link, we find, as in the *Preliminary Results*, that Dingsheng's pricing is governed by

15

> market indices and customer negotiation rather than by any
> fabrication or metal cost pass through formulae.

IDM at 11.  Indeed, the purpose of the 56.2 briefing on this issue, in part, was to discuss whether Dingsheng had provided sufficient evidence to warrant the granting of a double remedy adjustment.  Dingsheng's claims that it could not reasonably have anticipated Commerce's identification of problems with Dingsheng's reporting, despite being denied in the underlying Preliminary Results and Final Results.  Dingsheng Cmts. at 10; *but see* PDM at 23; IDM at 10–11.  Therefore, this argument lacks merit.

Finally, Dingsheng claims that 19 U.S.C. § 1677m(d) applies even if Commerce is not applying facts otherwise available under 19 U.S.C. § 1677e.  Dingsheng Cmts. at 7.  However, the purpose of 19 U.S.C. § 1677m(d) is to provide when Commerce may "disregard all or part of the original and subsequent responses."  *See Daikin America*, 2024 WL 1171736, at *3 n.3.  To be clear, this interpretation applies to the use of facts otherwise available, adverse or otherwise, which Commerce did not apply in the Final Results or in the Remand Results.  Accordingly, Dingsheng's statutory interpretation arguments are not availing.  Commerce is not identifying deficiencies within the meaning of 19 U.S.C. § 1677m(d) as a basis to disregard Dingsheng's submitted information; Commerce is evaluating Dingsheng's submitted information to determine whether it qualifies for an affirmative requested adjustment.  *See Dong-A Steel*, 475 F. Supp. 3d at 1347 n.22.

That is in line with the Federal Circuit's practice in *Koyo*.  The Federal Circuit in *Koyo* affirmed that the burden is on the party seeking a partial allocation of costs.  551 F.3d at 1292.  That decision did not require Commerce to give that appellant notice and opportunity to correct its unpersuasive attempts to receive an adjustment but instead affirmed that the party seeking the adjustment must provide "'the reasoning behind its calculations.'"  *Id.* (quoting *Koyo Seiko Co.,*

16

*Ltd. v. United States*, 516 F. Supp. 2d 1323, 1340–41 (Ct. Intl. Trade 2007)); *see also NTN Corp. v. United States,* 306 F.Supp.2d 1319, 1328 (Ct. Intl. Trade 2004)("[i]f Commerce is not satisfied, then it has the discretion to reject the allocations and adjustments sought by the interested party.") (citation omitted).

Commerce also explained that a simple denial of a requested adjustment demonstrates not an "adverse inference" but is simply a "failure to satisfy {a party's} evidentiary burden of establishing the requested offset as the regulation requires."  Remand Results at 13 (citing *Am. Tubular Products, LLC v. United States*, 847 F.3d 1354, 1362 (Fed. Cir. 2017)).

The Court should hold that Dingsheng has failed to preserve this argument, and if not, then Commerce's determination to deny the adjustment sought by Dingsheng is in accordance with law.  Dingsheng's arguments in response to the Remand Results either do not address central determinations and explanations by Commerce or are unsupported by relevant case law.  Accordingly, the Court should sustain Commerce's determination as supported by substantial evidence and in accordance with law.

### Conclusion

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter judgment for the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

/s/ Tate Walker

17

OF COUNSEL:
JONZACHARY FORBES
Senior Attorney
Office of the Chief Counsel
for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

TATE WALKER
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0163
E-mail: Tate.Walker@usdoj.gov

April 2, 2026

*Attorneys for Defendant*

## Certificate of Compliance

I hereby certify that the foregoing brief complies with the Rules of this Court, Chamber Procedures 2(B), and the Court's scheduling order in that it contains 4,740 words, including text, footnotes, and headings, as computed using Microsoft Word.

/s/ Tate N. Walker

18