NONCONFIDENTIAL
VERSION

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| JIANGSU DINGSHENG NEW MATERIALS JOINT-STOCK CO., LTD., *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>  and<br><br>ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, *et al.*,<br><br>    Defendant-Intervenors. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Court No. 23-00264 |

<u>DEFENDANT-INTERVENORS' RESPONSE TO PLAINTIFFS'</u>
<u>COMMENTS ON REMAND RESULTS</u>

JOHN M. HERRMANN
JOSHUA R. MOREY
MATTHEW G. PEREIRA
KELLEY DRYE & WARREN LLP
670 Maine Avenue, SW, Suite 600
Washington, DC 20024
(202) 342-8400

Counsel to Defendant-Intervenors

April 3, 2026

NONCONFIDENTIAL
VERSION

## Table of Contents

Page

I.    THE REMAND RESULTS ARE CONSISTENT WITH THE STATUTE
AND ARE OTHERWISE LAWFUL ................................................................... 2

    A.    19 U.S.C. § 1677m(d) Is Not Applicable.................................................... 2

    B.    Contrary to Dingsheng's Implications, It Was on Notice That Its
Double Remedies Questionnaire Response Was Insufficient to
Establish Eligibility for an Adjustment....................................................... 7

    C.    Dingsheng's Interpretation of the Statute Is Wrong ................................... 9

II.   THE DEPARTMENT LAWFULLY DETERMINED THAT DINSHENG
FAILED TO DEMONSTRATE IT IS ENTITLED TO A DOUBLE
REMEDIES ADJUSTMENT .............................................................................. 10

    A.    Legal Standard ........................................................................................... 11

    B.    The Court's Remand .................................................................................. 11

    C.    Cost-To-Price Link Analysis ..................................................................... 12

III.  CONCLUSION.................................................................................................... 15

NONCONFIDENTIAL
VERSION

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

American Tubular Products v. United States,
 Ct. No. 13-00029, 2014 WL 4977626 (CIT Sept. 26, 2014) ......................................................7

Assan Aluminyum Sanayi ve Ticaret A.S. v. United States,
 624 F. Supp. 3d 1343 (Ct. Int'l Trade 2023) .............................................................................5

BMW of N. Am. LLC v. United States,
 926 F.3d 1291 (Fed. Cir. 2019).................................................................................................14

Daikin Am., Inc. v. United States,
 Ct. No. 22-00122, Slip Op. 24-32, 2024 Ct. Intl. Trade LEXIS 30
 (Mar. 14, 2024) ...................................................................................................................... 4-5

Daikin Am., Inc. v. United States,
 Ct. No. 22-00122, Slip Op. 25-22, 2025 Ct. Intl. Trade LEXIS 23
 (Mar. 7, 2025) ........................................................................................................................ 6-7

Essar Steel Ltd. v. United States,
 678 F.3d 1268 (Fed. Cir. 2012)...................................................................................................6

Hitachi Energy USA Inc. v. United States,
 34 F.4th 1375 (Fed. Cir 2022) ....................................................................................................9

Jiangsu Dingsheng New Materials Joint-Stock Co. v. United States,
 794 F Supp. 3d 1334 (Ct. Int'l Trade 2025) .......................................................................11, 12

Jiangsu Zhongji Lamination Materials Co., (HK) v. United States,
 Ct. No. 21-00138, Slip Op. 23-84, 2023 Ct. Intl. Trade LEXIS 88
 (June 7, 2023) ...................................................................................................................... 5-6, 11

Meihua Group Int'l Trading (Hong Kong) Ltd. v. United States,
 633 F. Supp. 3d 1203 (Ct. Int'l Trade 2023) .............................................................................9

NSK Ltd. v. United States,
 510 F.3d 1375 (Fed. Cir. 2008).................................................................................................6

PT. Zinus Global Indonesia v. United States,
 686 F. Supp. 3d 1349 (Ct. Int'l Trade 2024) .............................................................................9

Vicentin S.A.I.C. v. United States,
 503 F. Supp. 3d 1255 (Ct. Int'l Trade 2021),
 aff'd, 42 F.4th 1372 (Fed. Cir. 2022)........................................................................................11

**NONCONFIDENTIAL**
**VERSION**

Wuhu Fenglian Co. v. United States,
     899 F. Supp. 2d 1355 (Ct. Int'l Trade 2013) ..............................................................6


**Statutes and Regulations**

19 U.S.C. § 1677e(a)..............................................................................................................9

19 U.S.C. § 1677e(b) .............................................................................................................9

19 U.S.C. § 1677f-1(f)(1) .....................................................................................................11

19 U.S.C. § 1677m(d) ..................................................................................................... *passim*

19 C.F.R. § 351.401(b) .....................................................................................................6, 10

19 C.F.R. § 351.401(b)(1)............................................................................................... *passim*

19 C.F.R. § 351.401(c)..........................................................................................................4


**Administrative Determinations**

Final Results of Redetermination Pursuant to Court Remand, Court No. 23-00264
     (Dep't Commerce Dec. 15, 2025) (Remand CR 4) (Remand PR 4)
     (ECF Nos. 75-76) ("Remand Results") ........................................................... *passim*

Issues and Decision Memorandum for the Final Determination in the
     Antidumping Duty Investigation of Certain Aluminum Foil from the People's
     Republic of China (Dep't Commerce Feb. 26, 2018), ref'd in
     83 Fed. Reg. 9282 (Mar. 5, 2018) (final results) ........................................................8

Issues and Decision Memorandum for the Final Results of the Antidumping Duty
     Administrative Review of Certain Aluminum Foil from the People's Republic
     of China; 2017-2019 (Dep't Commerce Feb. 19, 2021), ref'd in
     86 Fed. Reg. 11,499 (Feb. 25, 2021) (final results) ...................................................8

Issues and Decision Memorandum for the Final Results of the Antidumping Duty
     Administrative Review of Certain Aluminum Foil from the People's Republic
     of China; 2019-2020 (Dep't Commerce Dec. 30, 2021), ref'd in
     87 Fed. Reg. 935 (Jan. 7, 2022) (final results)...........................................................8

NONCONFIDENTIAL
VERSION

**DEFENDANT-INTERVENORS' RESPONSE TO
PLAINTIFFS' COMMENTS ON REMAND RESULTS**

These comments, filed on behalf of the Aluminum Association Trade Enforcement Working Group and its individual members JW Aluminum Company, Novelis Corporation, and Reynolds Consumer Products, LLC (collectively, "Defendant-Intervenors"), respond to comments filed on behalf of Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd.; Dingsheng Aluminium Industries (Hong Kong) Trading Co., Limited (Dingsheng Aluminium Industries (Hong Kong) Trading Co., Ltd.); Hangzhou Dingsheng Import & Export Co., Ltd. (Hangzhou Dingsheng Import and Export Co., Ltd.); Hangzhou Five Star Aluminium Co., Ltd.; Hangzhou Teemful Aluminium Co., Ltd.; Inner Mongolia Liansheng New Energy Material Co., Ltd.; and Inner Mongolia Xinxing New Energy Material Co., Ltd. (collectively, "Dingsheng" or "Plaintiffs") (hereinafter "Dingsheng's Cmts." (ECF Nos. 81-82)) on the U.S. Department of Commerce's ("Defendant") final results of redetermination pursuant to Court remand.  See Final Results of Redetermination Pursuant to Court Remand, Court No. 23-00264 (Dep't Commerce Dec. 15, 2025) (Remand CR 4) (Remand PR 4)[1] (ECF Nos. 75-76) ("Remand Results").  For the reasons below, Defendant's Remand Results are supported by substantial evidence and are otherwise in accordance with law.  As a result, Defendant-Intervenors urge the Court to sustain the Remand Results in their entirety and enter judgment accordingly.

---

[1]    Documents in the administrative record compiled in connection with the Remand Results are cited using the descriptions in the Index to the Administrative Record, filed with this Court on December 29, 2025 (ECF No. 77).  Documents are cited by their confidential record number ("Remand CR __") and/or their public record number ("Remand PR __"), as appropriate. Additionally, documents in administrative record compiled in connection with the Department's final results are cited using the descriptions provided in the Index to the Administrative Record, filed with this Court on February 20, 2024 (ECF No. 19).  These documents are cited by their confidential record number ("CR __") and/or their public record number ("PR __"), as appropriate.

NONCONFIDENTIAL
VERSION

**I.     THE REMAND RESULTS ARE CONSISTENT WITH THE STATUTE AND ARE OTHERWISE LAWFUL**

Dingsheng argues that Defendant's Remand Results violate 19 U.S.C. § 1677m(d) because Defendant: (1) denied Dingsheng a double remedies adjustment on the basis that its responses did not establish eligibility for the adjustment; and (2) did not provide Dingsheng an opportunity to remedy any deficiencies in its response.  Dingsheng's interpretation of the statute and regulatory requirements are wrong and should be rejected by the Court.  As with all favorable adjustments, Dingsheng bore the burden of establishing eligibility for the adjustment (19 C.F.R. § 351.401(b)(1)).  Dingsheng's failure to satisfy this burden is an issue of the weight of evidence, not a failure to comply with the Department's request for information.  As a result, 19 U.S.C. § 1677m(d) is not applicable, and Defendant was under no obligation to provide Dingsheng with additional opportunities to satisfy its burden of establishing eligibility for an adjustment.

**A.     19 U.S.C. § 1677m(d) Is Not Applicable**

Dingsheng claims the Department's Remand Results are unlawful because the Department failed to grant it an opportunity to address deficiencies in its questionnaire responses identified by the agency.  See generally Dingsheng's Cmts. at 3-10 (ECF Nos. 81-82).  Dingsheng further states, citing 19 U.S.C. § 1677m(d), that "{b}efore taking action adverse to a respondent based on alleged reporting deficiencies, the Department has a statutory obligation to inform a party of the deficiencies in its submission to afford the party an opportunity to cure those deficiencies."  Id. at 4 (ECF Nos. 81-82).  Dingsheng also states that 19 U.S.C. § 1677m(d) is "not confined to decisions based on" adverse facts available.  Id. at 7 (ECF Nos. 81-82).  Dingsheng's interpretation of the statute as applying to the instant circumstances is wrong.

The complete statutory provision relied on by Dingsheng states that:

> If the administering authority or the Commission determines that a response to a request for information under this subtitle **does not comply with the request,** the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle. If that person submits further information in response to such deficiency and either—
>
> > (1) the administering authority or the Commission (as the case may be) finds that such response is not satisfactory, or
> >
> > (2) such response is not submitted within the applicable time limits,
>
> then the administering authority or the Commission (as the case may be) may, subject to subsection (e), disregard all or part of the original and subsequent responses.

19 U.S.C. § 1677m(d) (emphasis added).

Dingsheng's double remedies questionnaire response does not fit within the framework of 19 U.S.C. § 1677m(d). The antecedent to application of 19 U.S.C. § 1677m(d) is that the Department "determines that a response to a request for information . . . *does not comply with the request.*" 19 U.S.C. § 1677m(d) (emphasis added). The Department did not determine that Dingsheng's request failed to "comply with" the Department's questionnaire. Dingsheng's submission of a double remedies questionnaire by the deadline established by the Department complied with the Department's request. Failing to comply with a request for information under 19 U.S.C. § 1677m(d) is distinct from submitting insufficient evidence to demonstrate eligibility for, and the amount of, a particular adjustment.

Indeed, the double remedies questionnaire can hardly be characterized as "a request for information" at all. The Department's double remedies questionnaire instructions provide that

-3-

NONCONFIDENTIAL
VERSION

{b}ecause the Department of Commerce (Commerce) is conducting concurrent AD and CVD reviews of certain aluminum foil from the People's Republic of China, we have determined that section 777A(f) of the Act *may be applicable in this AD review*.

Letter from USDCOC to Grunfeld Desiderio Pertaining to Dingsheng Double Remedies Qnaire at 1 (PR 124) (emphasis added). The questionnaire then makes clear that a respondent need only submit a response if it seeks a double remedies adjustment. See id. ("*Should* Dingsheng . . . *seek* an adjustment pursuant to section 777A(f) of the Act, it must submit to Commerce a complete response to the attached questionnaire, including appropriate summarizations of all proprietary data, as required by 19 CFR 351.304(c)") (emphasis added). Thus, the questionnaire is an opportunity for a respondent participating concurrently in antidumping and countervailing duty proceedings to demonstrate eligibility for a favorable adjustment, and it is not a request for information that is necessary to the Department's antidumping analysis.

The Department's regulations – specifically 19 C.F.R. § 351.401(b)(1) – place the burden on the interested party in possession of information to establish the amount and nature of a particular adjustment. See 19 C.F.R. § 351.401(b)(1) (providing that "{i}n making adjustments to export price, constructed export price, or normal value," which includes a double remedies adjustment, "{t}he interested party that is in possession of the relevant information has the burden of establishing to the satisfaction of the Secretary the amount and nature of a particular adjustment"). Here, Dingsheng bore the burden of demonstrating it was eligible for any double remedies adjustment, a burden that Dingsheng failed to carry.

Several judges of the U.S. Court of International Trade ("CIT") have interpreted 19 U.S.C. § 1677m(d) as not applying to circumstances covered by 19 C.F.R. § 351.401(b)(1), i.e., circumstances where a respondent is seeking a favorable adjustment. For example, in Daikin Am.,

NONCONFIDENTIAL
VERSION

Inc. v. United States, Ct. No. 22-00122, Slip Op. 24-32, 2024 Ct. Intl. Trade LEXIS 30 (Mar. 14, 2024) the Court noted that 19 U.S.C. § 1677m(d)

> must be read in tandem with that provision's second sentence, which governs when Commerce may "disregard all or part of" a respondent's submissions and apply facts otherwise available under 19 U.S.C. § 1677e.

Id. at 9 n.3, 2024 Ct. Intl. Trade LEXIS 30, at *7 n.3. In that case "no facts available, adverse or otherwise," were applied by the Commerce Department because the "respondent fails to carry its burden of showing eligibility for a constructed export price offset." Id. While the Court's analysis of the statute in this case is dicta, other decisions of the CIT reach the same conclusion, including in the context of Commerce denying a double remedies adjustment.

In Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, 624 F. Supp. 3d 1343 (Ct. Int'l Trade 2023), the Court interpreted 19 U.S.C. § 1677m(d) as not applying to the Commerce Department's denial of a respondent's request for a duty drawback adjustment – another favorable adjustment. See id., 624 F. Supp. 3d at 1364 (explaining that "the Government and the Association assert that where Commerce did not assess Assan's responses to be deficient -- but simply found that Assan was not entitled to an adjustment -- the agency had no obligation to issue an additional supplemental questionnaire under 19 U.S.C. § 1677m(d)" and holding that "the court agrees with the Government and the Association").

Similarly, in Jiangsu Zhongji Lamination Materials Co., (HK) v. United States, Ct. No. 21-00138, Slip Op. 23-84, 2023 Ct. Intl. Trade LEXIS 88 (June 7, 2023), the Court sustained the Commerce Department's denial of a double remedies adjustment, rejecting the respondent's argument "that if the Department found its information deficient, then the agency should have given it a chance to remedy any deficiency, but did not. ECF 47 at 57 (citing 19 U.S.C. §

NONCONFIDENTIAL
VERSION

1677m(d)).”  <u>Id.</u> at 37, 2023 Ct. Intl. Trade LEXIS 88, at *30.  Specifically, the Court held that “{t}he interested party that is in possession of the relevant information has the burden of establishing . . . the amount and nature of a particular adjustment.”  <u>Id.</u> at 37, 2023 Ct. Intl. Trade LEXIS 88, at *31 (citing 19 C.F.R. § 351.401(b)(1); <u>see</u> <u>also</u> <u>NTN Corp. v. United States</u>, 306 F. Supp. 2d 1319, 1328 (Ct. Int’l Trade 2004)).

The CIT and U.S. Court of Appeals for the Federal Circuit have also repeatedly held that the burden of creating an adequate record lies with the interested parties, not the Department, and further that – consistent with 19 C.F.R. § 351.401(b) – the burden of demonstrating eligibility for, and the amount of, a particular adjustment lies with the party in possession of the necessary information.  <u>See</u> <u>Essar Steel Ltd. v. United States</u>, 678 F.3d 1268, 1277 (Fed. Cir. 2012) (“It is Essar’s burden to create an accurate record during Commerce’s investigation.”) (citing <u>Zenith Elecs. Corp. v. United States</u>, 988 F.2d 1573, 1583 (Fed. Cir. 1993) (“The burden of production should belong to the party in possession of the necessary information”)); <u>Wuhu Fenglian Co. v. United States</u>, 899 F. Supp. 2d 1355, 1364-65 (Ct. Int’l Trade 2013) (“{I}t is Plaintiffs—<u>not</u> Commerce—who bear the burden of creating a record of relevant data in a timely fashion. . . . Plaintiffs cite no authority that would oblige Commerce to gather, on behalf of Plaintiffs, information for the record to ensure that Commerce has a complete understanding of the methodology behind Plaintiffs’ submitted data.  Nor is the Court aware of any such authority.”) (emphasis in original) (citations omitted); <u>NSK Ltd. v. United States</u>, 510 F.3d 1375, 1382 (Fed. Cir. 2008) (“{T}he party seeking a billing adjustment has the burden of establishing to the satisfaction of the Secretary the amount and nature of a particular adjustment.”) (citing 19 C.F.R. § 351.401(b)(1)); <u>Daikin Am., Inc. v. United States</u>, Ct. No. 22-00122, Slip Op. 25-22 at 25, 2025 Ct. Intl. Trade LEXIS 23, at *25-26, (Mar. 7, 2025) (“The Indian producer also attacks

NONCONFIDENTIAL
VERSION

Commerce's decision on the grounds that it 'never clarified or specifically requested additional information relating to {Gujarat's}' questionnaire responses. But again, even if that were true, it is just not relevant. 'The interested party that is in possession of the relevant information has the burden of establishing to the satisfaction of the {Department} the amount and nature of a particular adjustment.'") (quoting 19 C.F.R. § 351.401(b)(1)). These decisions inherently recognize that 19 U.S.C. § 1677m(d) is not applicable in situations where a party in possession of information needed to demonstrate eligibility for, and the amount of, a favorable adjustment and that party submits insufficient evidence regarding the claimed adjustment.

**B.     Contrary to Dingsheng's Implications, It Was on Notice That Its Double Remedies Questionnaire Response Was Insufficient to Establish Eligibility for an Adjustment**

Dingsheng's claims regarding 19 U.S.C. § 1677m(d) imply that it was unfairly prejudiced by not being placed on notice that its double remedies questionnaire response was insufficient to establish eligibility for an adjustment. For example, Dingsheng cites to American Tubular Products[2] for the prospect that 19 U.S.C. § 1677m(d) "ensures that Commerce's data collection does not morph into an administrative guessing game." Dingsheng's Cmts. at 5 (ECF Nos. 81-82). Dingsheng further claims that "the record in this proceeding is devoid of any notice or opportunity for Dingsheng to respond to the alleged deficiencies in its DRQR." Id. at 7 (ECF Nos. 81-82). Contrary to Dingsheng's claim, the company was on notice that its response was insufficient to establish eligibility for an adjustment, as the Department has rejected Dingsheng's request for an adjustment in all prior segments of the proceeding.

---

[2] American Tubular Products, LLC v. United States, Ct. No. 13-00029, 2014 WL 4977626, at *11 (CIT Sept. 26, 2014) ("American Tubular Products").

In the original investigation, the Department denied Dingsheng's request for a double remedies adjustment on the basis that "Dingsheng failed to substantiate a subsidies-to-cost link and a cost-to-price link with respect to its purchases of primary aluminum and steam coal for LTAR." Issues and Decision Memorandum for the Final Determination in the Antidumping Duty Investigation of Certain Aluminum Foil from the People's Republic of China, at 32 (Dep't Commerce Feb. 26, 2018), ref'd in 83 Fed. Reg. 9282 (Mar. 5, 2018) (final results). The Department further explained that it was rejecting Dingsheng's request because "Dingsheng did not answer certain questions in Commerce's double remedies questionnaire and did not provide sufficient documentary support for its answers," providing specific examples of Dingsheng's inadequate responses. Id. at 33. While Dingsheng did not brief the issue in the first or second administrative reviews, the Department offered similar reasoning for rejecting another mandatory respondent's request for a double remedies adjustment in each review. See, e.g., Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review of Certain Aluminum Foil from the People's Republic of China; 2017-2019, at 11-13 (Dep't Commerce Feb. 19, 2021), ref'd in 86 Fed. Reg. 11,499 (Feb. 25, 2021) (final results); Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review of Certain Aluminum Foil from the People's Republic of China; 2019-2020, at 22-24 (Dep't Commerce Dec. 30, 2021), ref'd in 87 Fed. Reg. 935 (Jan. 7, 2022) (final results) ("AR 2 I&D Memo"). Indeed, in the second administrative review, the Department specifically explained that "the changes to COM that result from changes to the SHFE/CCMN and LME aluminum ingot prices, we find that these are changes based on international market prices of an input, not changes resulting from receipt of a subsidy" an explanation that mirrors portions of the Department's explanations in this segment. AR 2 I&D Memo at 23. Thus, contrary to Dingsheng's claim,

Dingsheng understood its responses to the Department's double remedies questionnaire had been deemed insufficient to establish eligibility for an adjustment, and the company's claim that it was somehow placed on notice for the first time by the Department's draft remand results that its response was insufficient falls flat.

## C.      Dingsheng's Interpretation of the Statute Is Wrong

Dingsheng cites several cases in support of its claim that 19 U.S.C. § 1677m(d) required the Department to provide it with additional opportunities to demonstrate eligibility for a double remedies adjustment.  See Dingsheng's Cmts. at 5-6 (ECF Nos. 81-82) (citing Meihua Group Int'l Trading (Hong Kong) Ltd. v. United States, 633 F. Supp. 3d 1203, 1212 (Ct. Int'l Trade 2023) ("Meihua"); PT. Zinus Global Indonesia v. United States, 686 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2024) ("Zinus Global"); Hitachi Energy USA Inc. v. United States, 34 F.4th 1375, 1386 (Fed. Cir 2022) ("Hitachi Energy")).  As the Department correctly explained in the Remand Results, these cases are inapposite.  See Remand Results at 13 (ECF Nos. 75-76).

Each case cited by Dingsheng involves an instance where the Department sought to fill a gap in the record under 19 U.S.C. § 1677e(a) and/or draw an adverse inference in filling such a gap under 19 U.S.C. § 1677e(b).  See Hitachi Energy, 4 F.4th at 1385-86; Zinus Global, 686 F. Supp. 3d at 1354-55; Meihua, 633 F. Supp. 3d at 1211-12.  Further, none of the cases involved a respondent seeking a favorable adjustment for which the respondent bore the burden of establishing eligibility for, and the amount of, any adjustment.  See Hitachi Energy, 4 F.4th at 1385-86 (involving a reduction in U.S. gross unit prices for service-related revenues); Zinus Global, 686 F. Supp. 3d at 1354-56 (involving the Department's methodology for determining the country of origin of subject merchandise); Meihua, 633 F. Supp. 3d at 1211 (involving reported payment of duties and entered values).  Each of these cases, therefore, involves a situation where

NONCONFIDENTIAL
VERSION

the Department "determine{d} that a response to a request for information . . . *does not comply with the request*." 19 U.S.C. § 1677m(d) (emphasis added). And none of the cases involves a situation in which the respondent bore the burden of establishing eligibility for, and the amount of, an adjustment under 19 C.F.R. § 351.401(b). Thus, none of the case cited by Dingsheng supports its statutory interpretation, which ignores the plain language of the statute and the unique nature of a double remedies questionnaire as providing respondents an opportunity to seek an adjustment rather than being a request for information.

## II. THE DEPARTMENT LAWFULLY DETERMINED THAT DINSHENG FAILED TO DEMONSTRATE IT IS ENTITLED TO A DOUBLE REMEDIES ADJUSTMENT

Dingsheng argues the Department's determination that Dingsheng failed to demonstrate subsidy-to-cost and cost-to-price links is not supported by substantial evidence. See Dingsheng's Cmts. at 10-22 (ECF Nos. 81-82). Dingsheng is wrong. The Department's Remand Results address this Court's order by analyzing the information the Court identified as detracting from the Department's determination in the Final Results and is otherwise supported by substantial evidence. Accordingly, the Court should sustain the Remand Results.

As discussed below, the Department requires a respondent to demonstrate eligibility for a double remedies adjustment by showing both a subsidy-to-cost and a cost-to-price link. Defendant-Intervenors agree with the Department's Remand Results in which the agency determined neither link was established and hereby incorporate the Defendant's response to Dingsheng's comments by refence. For the sake of brevity and to conserve the Court's and Defendant-Intervenors' resources, Defendant-Intervenors limit their comments to Dingsheng's failure to establish the cost-to-price link. As both links are necessary, Dingsheng's failure to

NONCONFIDENTIAL
VERSION

demonstrate the cost-to-price link is grounds for rejecting its request for an adjustment, and the Court should sustain the Department <u>Remand Results</u>.

### A.    <u>Legal Standard</u>

To grant a double remedies adjustment, the statute requires that:

- a countervailable subsidy has been provided with respect to the class or kind of merchandise;

- such countervailable subsidy has been demonstrated to have reduced the average price of imports of the class or kind of merchandise during the relevant period; and

- the respondent provide sufficient information such that the Department can reasonably estimate the extent to which the countervailable subsidy at issue, in combination with the use of normal value, has increased the weighted average dumping margin for the class or kind of merchandise.

<u>See</u> 19 U.S.C. § 1677f-1(f)(1).

To implement the statute, the Department has established a two-pronged test (unchallenged by Dingsheng here) that requires a respondent to demonstrate a subsidies-to-cost link (the subsidy's effect on cost of manufacture) and a cost-to-price link (the cost of manufacture's effect on the price). <u>See</u> <u>Vicentin S.A.I.C. v. United States</u>, 503 F. Supp. 3d 1255, 1263 (Ct. Int'l Trade 2021), <u>aff'd</u>, 42 F.4th 1372 (Fed. Cir. 2022). A respondent must establish both links for the Department to grant an adjustment. <u>See</u> <u>Jiangsu Zhongji Lamination Materials Co. v. United States</u>, Ct. No. 21-00138, Slip Op. 23-84 at 30, 2023 Ct. Intl. Trade LEXIS 88, at *24-25 (June 7, 2023).

### B.    <u>The Court's Remand</u>

The Court remanded the Department's denial of Dingsheng's request for a double remedies adjustment to address evidence that detracted from the Department's determination that Dingsheng failed to establish the subsidies-to-cost and the cost-to-price links. <u>See</u> <u>Jiangsu Dingsheng New Materials Joint-Stock Co. v. United States</u>, 794 F Supp. 3d 1334, 1346-47 (Ct. Int'l Trade 2025)

NONCONFIDENTIAL
VERSION

("Jiangsu Dingsheng").  Regarding the Department's analysis of the cost-to-price link, the Court instructed the Department to address Exhibit DR5 of Dingsheng's double remedies questionnaire response, which contained meeting minutes that Dingsheng alleged established a cost-to-price link.  See id., 794 F Supp. 3d at 1347.  The Department addressed this evidence in its Remand Results, and it properly concluded the meeting minutes do not establish a cost-to-price link.  Accordingly, this Court should sustain the Remand Results.

**C.     Cost-To-Price Link Analysis**

Exhibit DR-5 contains the only record evidence submitted by Dingsheng to establish a cost-to-price link.  See generally Dingsheng's Double Remedies Questionnaire Response (Mar. 3, 2023) (CR 94-96) (PR 130) ("Dingsheng DRQR"); see also Jiangsu Dingsheng, 794 F Supp. 3d at 1347.  Accordingly, if this exhibit does not demonstrate a cost-to-price link (as the Department found), Dingsheng is not eligible for a double remedies adjustment.

The meeting minutes state:

[



]

Dingsheng DRQR at Exh. DR-5 (CR 94-96) (PR 130).  Thus, as the Department correctly explained in the Remand Results, the change in price identified by Dingsheng was made at Dingsheng's [                    ] not due to changes in Dingsheng's costs, and certainly not due to any subsidy from which Dingsheng may have benefitted.  See Remand Results at 18-19 (ECF Nos. 75-76).

Dingsheng's [

] See Dingsheng

DRQR at Exh. DR-5 (CR 94-96) (PR 130).  [

] See id.  Dingsheng's [

] Absent the explicit [                                    ] there
is no evidence that Dingsheng would have adjusted its prices.  As the Department noted, when a
respondent's pricing changes as a result of the [                                                ] there
is no cost-to-price link.  See Remand Results at 11 (ECF Nos. 75-76).  In sum, there is no evidence
that Dingsheng's costs had any impact on the prices offered by the company.  These facts support
the Department's determination that Dingsheng failed to establish a cost-to-price link and, thereby,
support the Department's rejection of Dingsheng's request for a double remedies adjustment.  The
Court, therefore, should sustain the Remand Results.

Further, as explained by the Department, Dingsheng failed to provide the basic information
requested by the agency that is necessary to determine if there was a cost-to-price link.  See
Remand Results at 10-11 (ECF Nos. 75-76).  For each subsidy for which Dingsheng requested a
double remedies adjustment, the Department instructed Dingsheng to report how many cost
changes  resulted in price changes during the POR, and how many cost changes for each subsidy
did not result in a price change.  See Dingsheng DRQR at 6 (CR 94-96) (PR 130).  Dingsheng's
response was general in nature, and the Department was correct in finding the response insufficient
for establishing the company's eligibility for an adjustment.  See id. (CR 94-96) (PR 130); see also

-13-

NONCONFIDENTIAL
VERSION

Remand Results at 10-11 (ECF Nos. 75-76).  Dingsheng also failed to provide any documentary support for its response, despite the fact that the Department explicitly requested full documentary support for Dingsheng's response to this question.  See Dingsheng DRQR at 5 (CR 94-96) (PR 130).  As the Department explained, Dingsheng bore the burden of demonstrating its eligibility for this offset, a burden that Dingsheng failed to meet here.  See Remand Results at 12-13 (ECF Nos. 75-76); 19 C.F.R. § 351.401(b)(1) ("The interested party that is in possession of the relevant information has the burden of establishing to the satisfaction of the Secretary the amount and nature of a particular adjustment."); BMW of N. Am. LLC v. United States, 926 F.3d 1291, 1295 (Fed. Cir. 2019) ("During an administrative review, the 'burden of creating an adequate record lies with interested parties and not with Commerce.'") (quoting Nan Ya Plastics Corp. v. United States, 810 F.3d 1333, 1337 (Fed. Cir. 2016) (quoting QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011)).

In sum, the Department has addressed the Court's remand instructions and supported its Remand Results with substantial evidence.  Dingsheng has failed to establish its eligibility for a double remedies adjustment.  Accordingly, this Court should sustain the Department's Remand Results.

**NONCONFIDENTIAL**
**VERSION**

## III.    CONCLUSION

For the reasons above, Defendant-Intervenors respectfully urge this Court to reject Plaintiffs' arguments, sustain Defendant's <u>Remand Results</u> in their entirety, and enter judgment accordingly.

Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
JOSHUA R. MOREY
MATTHEW G. PEREIRA
KELLEY DRYE & WARREN LLP
670 Maine Avenue, SW, Suite 600
Washington, DC 20024
(202) 342-8400

Counsel to Defendant-Intervenors

Dated:  April 3, 2026

**CERTIFICATE OF COMPLIANCE
WITH COURT OF INTERNATIONAL TRADE
STANDARD CHAMBERS PROCEDURES**

Pursuant to the Court of International Trade Standard Chambers procedures, undersigned counsel on behalf of the Aluminum Association Trade Enforcement Working Group and its individual members JW Aluminum Company, Novelis Corporation, and Reynolds Consumer Products, LLC (collectively, "Defendant-Intervenors"), certifies that these Response Comments on the U.S. Department of Commerce's Final Results of Redetermination Pursuant to Court Remand, Court No. 23-00264 (Dep't Commerce Dec. 15, 2025) (Remand CR 4) (Remand PR 4) (ECF Nos. 75-76) contain 4,263 words, including footnotes, tables, and charts. The word count certification is made in reliance on the word-count feature contained in Microsoft Enterprise – 365.

Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
JOSHUA R. MOREY
MATTHEW G. PEREIRA
KELLEY DRYE & WARREN LLP
670 Maine Avenue, SW, Suite 600
Washington, DC 20024
(202) 342-8400

Counsel to Defendant-Intervenors

Dated:  April 3, 2026