Slip Op. 26-63

## UNITED STATES COURT OF INTERNATIONAL TRADE

JIANGSU DINGSHENG NEW
MATERIALS JOINT-STOCK CO.,
LTD. ET AL.,

      Plaintiffs,

v.

UNITED STATES,

      Defendant,

and

ALUMINUM ASSOCIATION TRADE
ENFORCEMENT WORKING GROUP
AND ITS INDIVIDUAL MEMBERS,
ET AL.,

      Defendant-Intervenors.

Before: Claire R. Kelly, Judge

Court No. 23-00264
PUBLIC VERSION

## OPINION

[Sustaining Commerce's denial of a double remedies adjustment under 19 U.S.C. § 1677f-1(f)(1).]

Dated: June 16, 2026

Ned Herman Marshak, Lead Attorney, Dharmendra Narain Choudhary, and Jordan Charles Kahn, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of New York, NY and Washington, D.C., for Plaintiffs Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd., Dingsheng Aluminium Industries (Hong Kong) Trading Co., Limited, Hangzhou Dingsheng Import & Export Co., Ltd., Hangzhou Five Star Aluminium Co., Ltd., Hangzhou Teemful Aluminium Co., Ltd., Inner Mongolia Liansheng New Energy Material Co., Ltd., and Inner Mongolia Xinxing New Energy Material Co., Ltd.

Court No. 23-00264                                                    Page 2
**PUBLIC VERSION**

Tate Nathan Walker, U.S. Department of Justice, Commercial Litigation Branch – Civil Division, Lead Attorney and JonZachary Forbes, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C., for Defendant United States.

John M. Herrmann, II, Joshua Rubin Morey, Matthew G. Pereira, and Paul Charles Rosenthal, Kelley Drye & Warren, LLP, of Washington, D.C., for Defendant-Intervenors Aluminum Association Trade Enforcement Working Group and its Individual Members, JW Aluminum Company, Novelis Corporation, and Reynolds Consumer Products LLC.

Kelly, Judge: Before the Court is the U.S. Department of Commerce's ("Commerce") redetermination pursuant to this Court's remand order. See Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd. v. United States, 794 F. Supp. 3d 1334 (Ct. Int'l Trade 2025) ("Dingsheng I"); see also Redetermination Pursuant to Court Remand Order (Dec. 15, 2025), ECF Nos. 75–76 ("Remand Results"). Commerce continues to find that Plaintiffs Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd. et al. (collectively, "Dingsheng" or "Plaintiffs") provided insufficient evidence in their Double Remedies Questionnaire Response to demonstrate a subsidy-to-cost link and a cost-to-price link, and therefore, denies Plaintiffs' double remedies adjustment under section 777A(f)(1) of the Tariff Act of 1930 (19 U.S.C. 1677f-1(f)(1)).[1][2]    Remand Results at 4–21; see also Dingsheng Double Remedies

---

[1] Plaintiffs are Jiangsu Dingsheng New Materials Joint-Stock Co., Ltd., Dingsheng Aluminium Industries (Hong Kong) Trading Co., Ltd., Hangzhou Dingsheng Import & Export Co., Ltd., Hangzhou Five Star Aluminium Co., Ltd., Hangzhou Teemful Aluminium Co., Ltd., Inner Mongolia Liansheng New Energy Material Co., Ltd., and Inner Mongolia Xinxing New Energy Material Co., Ltd.

[2]    Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2024 edition.

Court No. 23-00264                                                      Page 3
**PUBLIC VERSION**

Questionnaire Response, PR 130, CR 94-96 bar code 4349609-01 (Mar. 3, 2023)

("DRQR").[3]  Plaintiffs argue that Commerce's denial of Plaintiffs' double remedies

adjustment on remand is unsupported by substantial evidence and violates

Commerce's obligations under 19 U.S.C. § 1677m(d) to provide notice of deficiencies

in questionnaire responses before denying the adjustment in the Final Results based

on its determination that Plaintiffs provided insufficient data to support their claims.

[Pls.'] Cmts. on Remand Results at 3–22, (Feb. 2, 2026), ECF Nos. 81–82 ("Pls.

Cmts."); see Certain Aluminum Foil From People's Republic of China: Final Results

of Antidumping Duty Administrative Review and Final Determination of No

Shipments; 2021-2022, 88 Fed. Reg. 76,734 (Nov. 7, 2023) ("Final Results") and

accompanying Final Issues & Decision Memo., PR 210, bar code 4456564-02 (Nov. 2,

2023) ("Final Decision Memo."). Defendant-Intervenors argue that Plaintiffs fail to

demonstrate eligibility for a double remedies adjustment and that here, 19 U.S.C.

§ 1677m(d) does not impose on Commerce an obligation to provide notice of

deficiency.[4] Def. Int. Cmts. on Remand Results at 2–15, (Apr. 3, 6, 2026), ECF Nos.

87–88 ("Def. Int. Cmts.").

---

[3] Citations to administrative record documents in this opinion are to the numbers
Commerce assigned to such documents in the indices, and all references to such
documents are preceded by "PR" or "CR" to denote public or confidential documents.
[4] Defendant-Intervenors are Aluminum Association Trade Enforcement Working
Group and its Individual Members, JW Aluminum Company, Novelis Corporation,
and Reynolds Consumer Products LLC.

## BACKGROUND

On June 9, 2022, Commerce initiated the fourth administrative review of the antidumping duty ("ADD") order on aluminum foil from the People's Republic of China for the 2021–2022 period of review ("POR"). Initiation of Antidumping and Countervailing Duty Administrative Reviews, 87 Fed. Reg. 35,165-02 (Dep't Commerce Jun. 9, 2022). Commerce selected Dingsheng as a mandatory respondent. U.S. Dep't Comm. Second Respondent Selection Memo., PD 53, CD 21 bar code 4274937-01 (Aug. 16, 2022). On February 10, 2023, because Commerce was conducting concurrent countervailing duty ("CVD") and ADD reviews of this subject merchandise, Commerce gave Plaintiffs the option to submit evidence of their eligibility for an adjustment by responding to a double remedies questionnaire. See U.S. Dep't Comm. Ltr. to Dingsheng: Double Remedies Questionnaire, PR 124 bar code 4340542-01 (Feb. 10, 2023) ("DRQR Ltr.").[5] On March 3, 2023, Dingsheng submitted its DRQR. See generally DRQR. On April 28, 2023, Commerce published the preliminary results of the review. See Certain Aluminum Foil From People's

---

[5] Commerce's letter to Plaintiffs indicates that a request for a double remedies adjustment is optional, explaining "[b]ecause the Department of Commerce (Commerce) is conducting concurrent AD and CVD reviews of certain aluminum foil from the People's Republic of China, we have determined that section 777A(f) of the Act may be applicable in this AD review. Should [the respondent] seek an adjustment pursuant to section 777A(f) of the Act, it must submit to Commerce a complete response to the attached questionnaire . . . ." See DRQR Ltr. at 1. Further, Commerce indicates that if it does not receive a timely response to the Double Remedies Questionnaire, it "may conclude that [the respondent] has decided not to seek a double remedy adjustment." Id. at 2.

Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Recission of Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2021-2022, 88 Fed. Reg. 29,092  (Dep't Commerce May 5, 2023) ("Preliminary Results") and accompanying Preliminary Issues & Decision Memo., PR 189, bar code 4371458-02 (May 1, 2023) ("Prelim. Decision Memo."). On November 7, 2023, Commerce issued its Final Results. See Final Results. In its prior opinion, the Court sustained Commerce's selection of Romania as the primary surrogate country and remanded Commerce's denial of Plaintiffs' double remedies adjustment for reconsideration or further explanation. See Dingsheng I, 794 F. Supp. 3d at 1347.

Commerce filed its Draft Remand Results on September 30, 2025. Draft Remand Redetermination, PR 1, CR 1 bar code 4834191-01 (Sept. 30, 2025) ("Draft Remand Results"). Commerce issued the final results of its determination on remand on December 15, 2025. See Remand Results. Plaintiffs commented on the Remand Results on February 2, 2026. See Pls. Cmts. Defendant-Intervenors commented on the Remand Results on April 3 and 6, 2026. See Def. Int. Cmts. Defendant replied to the comments on the Remand Results on April 2, 2026. Reply to Cmts. on Remand Results, Apr. 2, 2026, ECF No. 86 ("Def. Reply").

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(iii), which authorize the Court to review a final determination in an

administrative review of an ADD order.   19 U.S.C. § 1516a(a)(2)(B)(iii); 28 U.S.C.

§ 1581(c).  The Court sustains Commerce's determination unless it is "unsupported

by substantial evidence on the record, or otherwise not in accordance with law."  19

U.S.C. § 1516a(b)(1)(B)(i).  "'Substantial evidence' means 'such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion.'"  Crawfish

Processors Alliance v. United States, 483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting

Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court reviews remand

determinations for compliance with the Court's remand order.  Nakornthai Strip Mill

Pub. Co. v. United States, 587 F. Supp. 2d 1303, 1306 (Ct. Int'l Trade 2008).

## DISCUSSION

On remand, Commerce concludes that Dingsheng provided insufficient

evidence in its DRQR to demonstrate a subsidy-to-cost link or a cost-to-price link and

therefore denies Dingsheng's double remedies adjustment.  Remand Results at 4–21.

Plaintiffs argue that Commerce's determination is unsupported by substantial

evidence because Commerce "misconstrues" the data supporting subsidy-to-cost and

cost-to-price links and that Commerce failed to notify them of alleged deficiencies in

their DRQR responses.  Pls. Cmts. at 3–22.  Defendant and Defendant-Intervenors

argue Commerce's Remand Results are supported by substantial evidence, and that

19 U.S.C. § 1677m(d) does not apply here.  See Remand Results at 4–21; Def. Reply

at 5–17; Def. Int. Cmts. at 2–14.   For the following reasons, Commerce's

determination on remand is sustained.

**PUBLIC VERSION**

## I.    Countervailable Subsidy "Demonstrated to Have Reduced the Average Price of Imports"

In its remand determination, Commerce finds that Dingsheng does not provide sufficient evidence to warrant a double remedies adjustment. Remand Results at 2. Specifically, it concludes Dingsheng fails to demonstrate a subsidy-to-cost link because Dingsheng's evidence does not connect the effects of the LTAR subsidy programs to its overall cost of manufacturing. Id. at 5–8. Additionally, Commerce contends Dingsheng does not demonstrate a cost-to-price link because (1) its evidence does not demonstrate price decreases as a result of decreasing manufacturing input costs, and (2) its average raw materials costs and price-setting evidence in fact detracts from its claims. Id. at 8–11. Plaintiffs argue that Commerce's determination is not supported by substantial evidence because Commerce "misconstrues the relevant data supporting Dingsheng's subsidy-to-cost and cost-to-price linkage." Pls. Cmts. at 10. For the following reasons, Commerce's determination that Plaintiffs fail to demonstrate either a subsidy-to-cost or cost-to-price link and therefore are not entitled to a double remedies adjustment, is supported by substantial evidence and is otherwise in accordance with law.

Commerce imposes ADD when it determines that foreign merchandise is sold in the United States at less than its fair value, calculating the dumping margin based on the amount by which normal value exceeds export price. 19 U.S.C. §§ 1673; 1677(35). CVDs are imposed when Commerce determines that imports of subject merchandise benefit from a countervailable subsidy tied to production, manufacture,

or export.  19 U.S.C. § 1671(a).  For market economy countries, normal value is generally based on the price at which the merchandise is first sold in the exporting country's home market, which may reflect subsidies affecting costs or prices. 19 U.S.C. § 1677b(a)(1).  For NME countries, Commerce does not rely on home market prices but rather constructs normal value using surrogate values from market economy countries.  19 U.S.C. § 1677b(c); see also 19 U.S.C. § 1677(18)(A).  Thus, "in a market economy presumably normal value and export price will reflect the impact of a subsidy alike while in an NME normal value will be unaffected by a subsidy. Therefore, concurrent dumping and subsidy investigations in NMEs pose a risk of remedying the same unfair trade act twice."  Dingsheng I, 794 F. Supp. 3d at 1344.

Section 1677f-1(f)(1) of Title 19 directs Commerce, in NME proceedings, to reduce ADD margins by the amount necessary to prevent a double remedy arising from the concurrent imposition of ADD and CVD.  19 U.S.C. § 1677f-1(f)(1); see Guangdong Wireking Housewares & Hardware Co. v. United States, 745 F.3d 1194, 1197–98 (Fed. Cir. 2014); see also GPX Int'l Tire Corp. v. United States, 780 F.3d 1136, 1140 (Fed. Cir. 2015).  Where Commerce finds a countervailable subsidy, it must grant an adjustment if: (i) a party demonstrates that the countervailable subsidy reduced the average price of imports; and (ii) Commerce can reasonably estimate the extent to which the countervailable subsidy has increased the weighted-

average dumping margin for the imports. <u>See</u> 19 U.S.C. § 1677f-1(f)(1).[6] In

implementing this statutory framework, Commerce applies "a pass-through analysis"

of U.S. sales. <u>See</u> <u>Vicentin S.A.I.C. v. United States</u>, 503 F. Supp. 3d 1255, 1263 (Ct.

Int'l Trade 2021), <u>aff'd</u>, 42 F.4th 1372 (Fed. Cir. 2022) (explaining Commerce's use of

a "subsidies-to-cost link," e.g., the subsidy's effect on cost of manufacture, and a "cost-

to-price link," e.g., the producer's or exporter's prices changed as a result of changes

in cost of manufacture). As a matter of practice, Commerce grants a double remedies

adjustment only where a respondent establishes both links. <u>See, e.g.</u>, <u>Jiangsu Zhongji</u>

---

[6] Subsection 1677f-1(f)(1) provides:

> If the administering authority determines, with respect to a class or kind of merchandise from a nonmarket economy country for which an antidumping duty is determined using normal value pursuant to section 1677b(c) of this title, that--
>
> > (A) pursuant to section 1671(a)(1) of this title, a countervailable subsidy (other than an export subsidy referred to in section 1677a(c)(1)(C) of this title) has been provided with respect to the class or kind of merchandise,
> > (B) such countervailable subsidy has been demonstrated to have reduced the average price of imports of the class or kind of merchandise during the relevant period, and
> > (C) the administering authority can reasonably estimate the extent to which the countervailable subsidy referred to in subparagraph (B), in combination with the use of normal value determined pursuant to section 1677b(c) of this title, has increased the weighted average dumping margin for the class or kind of merchandise,
>
> the administering authority shall, except as provided in paragraph (2), reduce the antidumping duty by the amount of the increase in the weighted average dumping margin estimated by the administering authority under subparagraph (C).

19 U.S.C. § 1677f-1(f)(1).

Lamination Materials Co., (HK) v. United States, No. 21-00138, 2023 WL 3863201,

at *11 (Ct. Int'l Trade June 7, 2023) (citing Vicentin, 503 F. Supp. 3d at 1263).

Here, Commerce concludes that Plaintiffs do not demonstrate a subsidy-to-cost

link.  Remand Results at 15.  Dingsheng identifies certain accounting entries for

expenses incurred, but it fails to "tie provision of goods for LTAR to the costs of raw

material purchases" or "demonstrate the extent to which input costs were affected by

subsidies."[7]  Id. at 15 (citing DRQR at Exs. DR-3–DR-4).  Although Dingsheng states

that the provision of aluminum plate and strip for LTAR impacts the cost of its

manufacturing, its accounting records are unclear as to how the provision of these

products impact costs.[8]  Id.  Dingsheng asks Commerce to assume as self-evident that

the provision of LTAR raw materials impacts its costs.  See Pls. Cmts. at 14.

However, it is reasonably discernible that Commerce requires information to quantify

the extent of any impact.  Remand Results at 4 (noting the statutory requirement

that Commerce be able to reasonably estimate the extent to which the countervailable

subsidy "has increased the weighted-average dumping margin"); Id. at 15

(questioning the extent to which input costs were affected by the subsidies).  The

---

[7]  The items are "[[
            ]]."  Remand Results at 15 (citing DRQR at Exs. DR-3–DR-4).
[8]   The  accounting  records  refer  to  [[
                              ]].  See DRQR at Ex. DR-3B.  Commerce acknowledges
Dingsheng's clarification that [[                    ]] materials refer to intermediate
products made from raw materials subject to LTAR provisions but explains that
Dingsheng fails to connect the provision of LTAR raw materials to its cost of
manufacturing.  Remand Results at 6 (citing Pls. Cmts. at 10–11).

possibility that the provision of raw material inputs for LTAR impacts Dingsheng's

costs for those inputs does not reveal the measurable extent of any impact. Id. at 21

(concluding that Dingsheng is not eligible for a double remedies adjustment because

it failed to meet the requirement of [19 U.S.C. § 1677f-1(f)(1)]); see 19 U.S.C. § 1677f-

1(f)(1)(C) (Commerce determines if it can "reasonably estimate the extent to which

the countervailable subsidy . . . in combination with the use of normal value . . . has

increased the weighted average dumping margin").[9]

Further, the DRQR requires applicants seeking adjustment to identify changes

in relevant costs. Remand Results at 6 (citing DRQR at 7). Dingsheng indicates that

major input prices "continuously fluctuate according to the market conditions."[10] See

id. at 6–7 (citing DRQR at 5–6). Commerce concludes that this information does not

allow it to isolate the effect of the subsidy on Dingsheng's input costs, and

---

[9] Plaintiffs argue that because Commerce found in the final results of the parallel CVD administrative review for the 2021–2022 POR that Dingsheng purchased raw materials for LTAR, Commerce cannot deny the link between those inputs' procurement costs and changes in Dingsheng's cost of manufacturing. Pls. Cmts. at 11–12. An inference drawn from Commerce's finding that raw material inputs were provided for LTAR in the CVD review does not meet Plaintiffs' burden of showing a link between the inputs' procurement costs and the resulting cost of manufacturing. See Remand Results at 15–16 (citing DRQR at Exs. DR-3–DR-4).

[10] Plaintiffs argue that "commercial realities" prevent any party from precisely quantifying the portion of a subsidy affecting its input costs, since in accounting records, parties typically do not separately track subsidies or know the exact amount attributable to a specific input. Pls. Cmts. at 13. However, the statute requires Commerce to determine that Plaintiffs have demonstrated that the countervailable subsidy reduced the average price of imports. See 19 U.S.C. § 1677f-1(f)(1)(B). Therefore, to establish how the subsidy lowers costs, Plaintiffs must demonstrate a connection between the subsidy and the relevant raw material inputs. See id.

consequently, the effect on its cost of manufacturing. See id. at 7. Without a subsidy-

to-cost link, Commerce cannot reasonably estimate how much the subsidy has

increased the weighted-average dumping margin for Plaintiffs' merchandise. Id. at

15; see also 19 U.S.C. § 1677f-1(f)(1); 19 C.F.R. § 351.401(b).

Commerce also reasons that Dingsheng's explanation of its sales process

suggests that changes in cost could be the result of factors other than subsidies.[11]

Specifically, Commerce points to evidence that Dingsheng's U.S. sales process relies

on a fluctuating market index. Remand Results at 7 (citing Supplemental

Questionnaire for Sections A, C, and D at 6, bar code 4343029-01 (Feb. 16, 2023); see

also id. at 8 (citing Dingsheng Supplemental A & C Response, PR 133, bar code

4354244-01 (Mar. 16, 2023). Plaintiffs contend that inputs' "fluctuating market

index-based prices (i.e., benchmark prices)" are adjusted downwards by subsidies,

and therefore, the existence of a fluctuating market index for input prices is

insufficient to reject a double remedies adjustment. See Pls. Cmts. at 16. Commerce

concedes it is possible to demonstrate a subsidy-to-cost link where prices are market-

---

[11]  The terms of sale included [[

]] Remand Results at 7–8 (citing Dingsheng Supplemental A & C Response,
PR 133, bar code 4354244-01 (Mar. 16, 2023). Commerce indicates that as a matter
of practice, changes in [[                                      ]] rather than changes
because of receipt of a subsidy are not sufficient to establish a subsidy-to-cost link.
Id. at 8 (citing Certain Aluminum Foil from the People's Republic of China: Final
Results of Antidumping Duty Admin. Review and Final Determination of No
Shipments; 2019–20, 87 Fed. Reg. 935 (Jan. 7, 2022), and accompanying Issues &
Decision Memo. at cmt. 4.).

driven, but the respondent must first establish the subsidy-to-cost link, which Commerce reasonably concludes Dingsheng fails to do. See Remand Results at 18.

Likewise, for the cost-to-price link, Commerce concludes that the record evidence does not support the conclusion that changes in cost impacted price. Id. at 19–20. Specifically, Commerce examined the average pricing data, including sales from December 2021 through early January 2022, and concluded that—even assuming, as Plaintiffs argue, that a lag delayed implementation of the lower prices established at the December 2021 sales meeting and that a downward pricing trend therefore began in early January 2022—the evidence did not demonstrate that the downward trend continued into late January and February 2022. Id. at 20; see Pls. Cmts. at 18–19. Although Dingsheng's average prices in December 2021 exceeded those in January 2022, Commerce finds, based on the record, that the downward trend may have resulted from a single outlier sale. Remand Results at 21. Commerce weighs the average price data evidence and finds it does not demonstrate that subsidy-driven changes in the cost of manufacturing resulted in a change in prices. Id. at 20–21. Plaintiffs' argument essentially asks the Court to reweigh the evidence, and the Court will not do so. See Nippon Steel Corp. v. United States, 301 F. Supp. 2d 1355, 1360 (Ct. Int'l Trade 2003) (citing Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 936 (Fed. Cir. 1984)).

Further, the evidence did not reveal the company policy with respect to both increases and decreases in prices, so Commerce cannot determine based on the

evidence what motivated the price changes represented on the record. Commerce's

practice recognizes both price increases and decreases that may result from changes

in the cost of manufacturing. See Remand Results at 19–20. Dingsheng argues that

Commerce never asked for an illustration of cost-to-price links for instances where

input costs trended upward. Pls. Cmts. at 17. Moreover, Dingsheng contends that

its evidence shows it adjusted its prices upward to account for an increase in LTAR

costs in March 2022. See id.; Remand Results at 20–21. Although Dingsheng claims

it was unaware that Commerce required information about price increases as well as

decreases, Pls. Cmts. at 17, Commerce explains that the double remedies

questionnaire specifically asked about the overall procedure followed by Dingsheng

when prices change. Remand Results at 19 (citing DRQR at 2). Indeed, the

questionnaire inquires as to "price changes" generally at several points. See e.g.,

DRQR at 6. Commerce weighs the evidence, accounts for Plaintiffs' arguments about

the lag and the evidence of a price increase in March 2022, and concludes that the

remaining evidence is insufficient to establish a cost-to-price link. The Court will not

reweigh the evidence.

Commerce also concludes the sales meeting minutes indicate that Dingsheng

made price adjustments for reasons other than changes in its cost of manufacturing

following decreases in costs for raw material inputs provided for LTAR.[12]     In

---

[12] Specifically, Commerce finds:

(footnote continued)

particular, customers' requests may have influenced those changes. Remand Results

at 18–19. Plaintiffs argue that any influence customer requests may have on price

revisions is secondary to the "primary causal factors," especially changes in

Dingsheng's cost of manufacturing. Pls. Cmts. at 21. Defendant notes that the

evidence of customer relationships influencing price changes comes directly from

Dingsheng's meeting minutes, and therefore, Commerce's determination is record-

based, not speculative. Def. Reply at 12 (citing Remand Results at 18–19 (citing

DRQR at Ex. DR-5)); see also Remand Results at 11 (noting that price changes

attributable to factors other than changes in cost of production undermine a finding

of a cost-to-price link). In its remand, Commerce weighs Dingsheng's sales meeting

evidence and concludes that the influence of customer requests, indicated in the

minutes, detracts from a conclusion that changes in Dingsheng's cost of

manufacturing motivated price changes. Remand Results at 18–19. Thus, Commerce

reasonably concludes that the average price data does not support a cost-to-price link.

---

[[



]]

Remand Results at 18–19.

**PUBLIC VERSION**

## II.    Notice of Response Deficiency under 19 U.S.C. § 1677m(d)

Plaintiffs contend that Commerce failed to comply with 19 U.S.C. § 1677m(d) which requires it to identify deficiencies in Dingsheng's DRQR before denying the requested adjustment.  Pls. Cmts. at 3–10.  Defendant and Defendant-Intervenors respond that a double remedies questionnaire is not a request for information within the 19 U.S.C. § 1677m(d) framework, and nonetheless, Commerce does not conclude that Dingsheng's DRQR submission "did not comply with the request," but instead determines Dingsheng's evidence was insufficient to establish eligibility for the requested adjustment.[13]  Def. Reply at 12–16; Def. Int. Cmts. at 3–10.  Defendant further claims that Plaintiffs waived any argument regarding section 1677m(d) by not raising it in their complaint or initial 56.2 brief.[14]  See Def. Reply at 12–13.  For the following reasons, Plaintiffs' argument that Commerce failed to comply with the requirements of 19 U.S.C. § 1677m(d) fails.

Section 1677m(d) of Title 19 obligates Commerce to inform a party of deficiencies in response to Commerce's requests for information.

> (d) Deficient submissions
>
> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply

---

[13]  Defendant and Defendant-Intervenors note that Plaintiffs' cited cases discussing the applicability of § 1677m(d) only reach the issue in the context of the application of facts otherwise available, and Commerce does not apply facts otherwise available here.  Def. Reply at 14–16; Def. Int. Cmts. at 9; Remand Results at 13–14.  However, there is no basis in the statutory language limiting § 1677m(d) to applications of facts otherwise available.

[14]  Because the Court concludes § 1677m(d) does not apply here, it does not reach Defendant's waiver argument.

> with the request, the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle . . . .

19 U.S.C. § 1677m(d). The statute applies where (i) Commerce requests information and (ii) the response to that request fails to comply with the request, resulting in a deficiency. See id. Thus, the statute fosters fair notice to parties of the regulatory requirements and accuracy of Commerce's determinations. See id.; see, e.g., Tianjin Mach. Imp. & Exp. Corp. v. United States, 353 F. Supp. 2d 1294, 1304 (Ct. Int'l Trade 2004), aff'd, 146 F. App'x 493 (Fed. Cir. 2005) (discussing section 1677m(d) as promoting the values of fairness and efficiency); Shelter Forest Int'l Acquisition, Inc. v. United States, 497 F. Supp. 3d 1388, 1399 (Ct. Int'l Trade 2021) (discussing section 1677m(d) and the value of fairness and accuracy).

It is a fundamental principle of administrative law that regulated parties have fair notice sufficient to what the law requires. F.C.C. v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012); Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 13–15 (1978); see also Satellite Broad. Co. v. F.C.C., 824 F.2d 1, 3–4 (D.C. Cir. 1987). Section 1677m(d) ensures Commerce provides that notice, where practicable, and Commerce itself has recognized the fairness and accuracy implications where it has failed to provide such notice. See, e.g., Wheatland Tube v. United States, 650 F. Supp. 3d 1379, 1381 (Ct. Int'l Trade 2023) (Commerce conceding that respondents lacked an opportunity to remedy any deficiencies in their responses).

Nothing in the statutory text limits the application of § 1677m(d) to requests contained in an initial questionnaire, nor does it specifically exclude requests for information related to adjustments sought by respondents.  The statute identifies a "response to a request for information."  19 U.S.C. § 1677m(d).  Although Commerce requests information in the first instance when it issues an initial questionnaire, the compilation of the administrative record involves multiple successive requests for information, including requests concerning specific treatment sought by respondents, such that Commerce can fulfil its obligation under the statute to determine accurate antidumping duty rates.  See 19 C.F.R. § 351.301(c)(1) ("During a proceeding the Secretary may issue to any person questionnaires, which includes both initial and supplemental questionnaires"); see also Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States, 716 F.3d 1370, 1379 (the "overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible.") (citing Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990)).  For the double remedies adjustment, Commerce provides parties with a questionnaire.  See, e.g., DRQR Ltr. at 1–2.  Where Commerce requires particular information to reach its determination, it must inform regulated parties of what it requires.  See, e.g., Canadian Solar Inc. v. United States, 537 F. Supp. 3d 1380, 1398 (Ct. Int'l Trade 2021) (holding that Commerce must give respondents a chance to correct any deficient information, not just information requested in an initial questionnaire); Risen Energy, Co., LTD. v. United States, 724 F. Supp. 3d 1356, 1363

(Ct. Int'l Trade 2024) (explaining that Commerce should have informed the respondent that its incomplete collection of non-use certificates was a deficient response); but see, e.g., Shenzhen Xinboda Indus. Co. v. United States, 357 F. Supp. 3d 1295, 1304–05 (Ct. Int'l Trade 2018) (explaining that section 1677m(d) applies to a respondent's questionnaire responses, which are distinct from voluntary submissions of surrogate value data); Qingdao Sea-Line Trading Co. v. United States, 36 C.I.T. 451, 460 n.9 (2012) (the "deficient submissions" requirement applies where a respondent supplies information "in response to [Commerce's] request," not where a respondent voluntarily proposes surrogate value data).

Under the statute, the duty to give notice and an opportunity to cure, however, is limited to deficient submissions. See 19 U.S.C. § 1677m(d). If Commerce "determines" a "response to a request for information" "does not comply with the request" it must identify the "nature of the deficiency." See id. Assessing compliance necessarily involves defining the parameters of the information requested, and the information supplied. Thus, Commerce may ask for a particular type of information and the respondent may fail to supply that information. See, e.g., Maverick Tube Corp. v. United States, 857 F.3d 1353, 1356 (Fed. Cir. 2017) (noting that Commerce issued a supplemental questionnaire where the respondent failed to provide data for all the locations requested). Alternatively, Commerce may determine that a response did not comply with a request because Commerce was imprecise in identifying what

was required.[15]  See, e.g., American Tubular Products, LLC v. U.S., No. 13-cv-00029, 2014 WL 4977626, at *11 (Ct. Int'l Trade Sept. 6, 2014) (citing Böwe-Passat v. United States, 17 C.I.T. 335, 342 (1993)) (explaining that where Commerce's request is unclear, it must give notice of deficiencies under 1677m(d) to avoid punishing parties for giving incomplete answers to Commerce's "cryptic questions").  A deficient response, whether because of the failure to supply specifically requested information or Commerce's failure to precisely identify its requirements, leaves Commerce without the information needed to make a decision. By contrast, section 1677m(d) does not apply where Commerce determines that a party's submitted information, although facially responsive, is insufficient to support the ultimate determination the party seeks.  See, e.g., ABB Inc. v. United States, 355 F. Supp. 3d 1206, 1222 (Ct. Int'l Trade 2018) (noting that the supply of seemingly complete but inaccurate information does not trigger section 1677m(d)).

---

[15] Where Commerce concludes it needs different information than that supplied by the respondent because Commerce's initial request was either incomplete or imprecise, one might argue § 1677m(d) would not be triggered because arguably, the response did comply with the request, but the request was not what Commerce wanted.  The statute provides for a deficiency notice where Commerce "determines" a response "does not comply." 19 U.S.C. § 1677m(d).  Commerce, in making its determination, may conclude that its request requires further clarification. See, e.g., NSK Ltd. v. United States, 481 F.3d 1355, 1360 n.1 (Fed. Cir. 2007) (Commerce satisfied its obligations under § 1677m(d) when it issued a supplemental questionnaire identifying and requesting clarification of the data respondent initially submitted.).  Nonetheless, where Commerce requires information, it did not ask for initially, fundamental administrative law principles would require Commerce to provide notice and an opportunity to submit the required information, even if § 1677m(d) did not apply.  See Charles H. Koch, Jr. & Richard Murphy, Administrative Law and Practice § 4:32. Notice. (3d ed. Mar. 2026 update).

An exporter of subject merchandise from a nonmarket economy ("NME") may request an adjustment from Commerce in the form of a reduction in antidumping duties when it is subject to both countervailing duties and antidumping duties, i.e., a "double remedies adjustment." See 19 U.S.C. § 1677f-1(f)(1). In such a case, the burden is on the party seeking an adjustment to present evidence establishing its eligibility for that adjustment. 19 C.F.R. § 351.401(b).

> (b) Adjustments in general. In making adjustments to export price, constructed export price, or normal value, the Secretary will adhere to the following principles:
>
> (1) The interested party that is in possession of the relevant information has the burden of establishing to the satisfaction of the Secretary the amount and nature of a particular adjustment; and
>
> (2) The Secretary will not double-count adjustments.

19 C.F.R. § 351.401(b).

In this case, Commerce was not required to issue a deficiency notice pursuant to section 1677m(d). As a preliminary matter, Defendant and Defendant-Intervenor's arguments that section 1677m(d) does not apply in circumstances where Commerce reviews information supplied in connection with a request for a double remedies adjustment is mistaken. See Def. Reply at 16; Def. Int. Cmts. at 3–4. As discussed, Commerce's double remedies questionnaire is a request for information. Both fairness and accuracy concerns require that parties have notice of the information Commerce needs to make its determinations. See 19 U.S.C. § 1677m(d); see, e.g., Tianjin Mach., 353 F. Supp. 2d at 1304, aff'd, 146 F. App'x 493 (discussing section 1677m(d) as promoting the values of fairness and efficiency); Shelter Forest, 497 F.

**PUBLIC VERSION**

Supp. 3d at 1399 (discussing section 1677m(d) and the values of fairness and accuracy).

Here, Plaintiffs had notice of the required information and responded to the request for information; however, Commerce determined the response did not support the requested adjustment. Plaintiffs, whose merchandise was subject to both CVD and ADD during the POR, requested a double remedies adjustment from Commerce, and submitted evidence in response to Commerce's double remedies questionnaire. See generally DRQR (responding to requests for information such as the cost items impacted by each subsidy program, how many times Plaintiffs identified a change in the cost items, company price-setting methodology, and supporting accounting data). In response to the double remedies questionnaire, Dingsheng identified four subsidy programs where goods were provided for less-than-adequate remuneration ("LTAR"). See id. at 1–8. Dingsheng reported that under these programs, the provision of LTAR raw materials inputs impacted its cost of manufacturing. See id.[16] Ultimately,

---

[16] In order to demonstrate its receipt of LTAR inputs, Dingsheng included exhibits of sample accounting vouchers, minutes from a company sales and production meeting, and charts of its average raw material costs for the POR as evidence to support its claims. See DRQR at 1–8; id. at Exs. DR-1–DR-5. "The accounting vouchers show [[                                                                    ]]; however, Dingsheng did not demonstrate how these accounting records specifically relate to the provision of these goods for LTAR." Remand Results at 6. Commerce concludes Dingsheng's proffered evidence is insufficient to support an adjustment, explaining that the existing record does not support the claimed adjustment because although

(footnote continued)

**PUBLIC VERSION**

Commerce determines that Dingsheng fails to demonstrate how its accounting entries for input expenses relate to costs such that Commerce can quantify the impact of the subsidy on its cost of manufacturing; therefore, Commerce determines the evidence shows no subsidy-to-cost link. Remand Results at 6–7. Commerce also determines that Dingsheng's evidence does not demonstrate price decreases as a result of decreasing manufacturing input costs and therefore shows no cost-to-price link. Id. at 8–11. Thus, Commerce concludes that the information provided is insufficient to support granting the adjustment. See id. at 16.

Plaintiffs argue that Commerce's determination triggers Commerce's obligations under section 1677m(d). See Pls. Cmts. at 7 ("[i]n the absence of notice and opportunity to comment, Commerce was prohibited by law from denying the requested double remedies offset."). The distinction between a response that does not comply and one that is insufficient to persuade Commerce that substantial evidence supports the desired determination, is sometimes subtle. Indeed, in this case, Commerce's choice of words might lead one to conflate a deficient response with an insufficient argument. For example, in its Draft Remand Results, Commerce stated that "Dingsheng did not adequately respond to Commerce's requests for information

---

its accounting records show receipt of certain goods, Dingsheng does not demonstrate how these accounting records relate to the provision of goods for LTAR. See, e.g., Remand Results at 6. Ultimately, even assuming Plaintiffs' accounting records did demonstrate Dingsheng's receipt of inputs for LTAR, Commerce concludes that Plaintiffs do not establish a link between those subsidized costs and the cost of manufacturing.

Case 1:23-cv-00264-CRK    Document 98    Filed 07/01/26    Page 24 of 25

Court No. 23-00264                                                                  Page 24

**PUBLIC VERSION**

and documentary support with respect to its use of the four subsidy programs that it claimed impacted its cost of manufacturing." Draft Remand Results at 6; Remand Results at 6. Further, Commerce originally phrased its finding in the Draft Remand Results as "the deficiencies in Dingsheng's DRQR," and subsequently revised its phrasing in the Remand Results to "the insufficient supporting information in Dingsheng's DRQR." See Draft Remand Results at 6; Remand Results at 8. However, the final Remand Results demonstrate that Plaintiffs' response fails to establish a direct subsidy-to-cost and cost-to-price link is the basis for denying the adjustment request. Remand Results at 11, 13, 16. Respondents had notice of Commerce's requirement to establish these direct links to be eligible for an adjustment. See DRQR. As discussed, the record evidence does not establish either link. Commerce, in weighing the value of the information provided, finds Plaintiffs' evidence insufficient to support a double remedies adjustment. See, e.g., Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, 624 F. Supp. 3d 1343, 1366–68 (Ct. Int'l Trade 2023) (holding that Commerce may rely on documents that support a reasonable finding that the claimed adjustment is not warranted, even without questioning the underlying completeness or accuracy of the submission). Commerce's determination is supported by substantial evidence.[17]

---

[17] Moreover, even if Plaintiffs' submission could be characterized as deficient rather

(footnote continued)

Court No. 23-00264                                                 Page 25
**PUBLIC VERSION**

### CONCLUSION

Because Commerce reasonably determined the countervailable subsidies at issue have not been demonstrated to have reduced the average price of Dingsheng's imports and thus Commerce cannot "reasonably estimate the extent to which the subsidy increased the weighted-average dumping margin," Commerce's Remand Results denying Plaintiffs a double remedies adjustment are supported by substantial evidence, in accordance with law, and comply with the Court's order in Dingsheng I, and are therefore sustained. Judgment will enter accordingly.

                                          /s/ Claire R. Kelly
                                          Claire R. Kelly, Judge

Dated:        June 16, 2026
                New York, New York

---

than insufficient within the meaning of section 1677m(d), Plaintiffs do not explain what additional information they would have provided had they been given notice and an opportunity to cure the identified deficiencies in their responses. See Pls. Cmts. at 6–7. Because the record does not indicate that Plaintiffs could supply information that would satisfy Commerce if given the chance, requiring further notice or reopening the record would be unnecessary because such notice would be futile and would not affect the outcome. See, e.g., Risen Energy, 724 F. Supp. 3d at 1362–63.